UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    **CASE NO.:  21-CR-20442-CR-HUCK**

       Plaintiff,

vs.

JORGE LUIS NOBREGA RODRIGUEZ.

       Defendant.

_____/

## THIRD PARTY, B&B CAPITAL GROUP 26. LLC'S NOTICE OF CLAIM AND PETITION FOR ANCILLARY HEARING

COMES NOW, Third Party, B&B CAPITAL GROUP 26, LLC (hereinafter "B&B" or "Claimant"), by and through its undersigned counsel, hereby provides formal notice to the Court and the Government of its claim/legal interest to property subject to the Money Judgment of Forfeiture and Preliminary Order of Forfeiture entered in this cause (D.E. 38), petitions this Court for an Ancillary Hearing pursuant to 21 U.S.C. § 853(n); 18 U.S.C. § 982(b)(1); and Rule 32.2, Fed. R. Crim. P., and asserts its interest as an innocent third party with respect to real property which has been forfeited to the Government in the above-styled case. In support of its position herein, the Claimant states as follows:

### PETITION FOR ANCILLARY HEARING

**A. PROPERTY HISTORY & RELEVANT FACTS GIVING RISE TO CLAIMANT'S INTERESTS.**

1. B&B asserts its interest in the following real property (hereinafter "subject property") ordered forfeited to the United States in this Court's Preliminary Order of Forfeiture dated April 29, 2022 (D.E. 38):

    *a.* Legal Address:      ***4696 NW 74 Ave, #7, Doral, FL 33166***;

    *b.* Legal Description:    ***UNIT 7, BUILDING 2, BIG BEN COMMERCE***

1



QUINTERO BROCHE ™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

***CENTER, A CONDOMINIUM, ALL AS SET FORTH IN THE DECLARATION OF CONDOMINIUM AND THE EXHIBITS ATTACHED THERETO AND FORMING A PART THEREOF, AS RECORDED IN OFFICIAL RECORDS BOOK 19561, PAGE 4562, AND ALL AMENDMENTS THERETO, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA. THE ABOVE DESCRIPTION INCLUDES, BUT IS NOT LIMITED TO, ALL APPURTENANCES TO THE CONDOMINIUM UNIT ABOVE DESCRIBED, INCLUDING THE UNDIVIDED INTEREST IN THE COMMON ELEMENTS OF SAID CONDOMINIUM.***

2. On or about May 16, 2014, the subject property was purchased by Jorge L. Nobrega (hereinafter "Nobrega" or "Defendant") and Durmelys J. Moy, as joint tenants with right of survivorship. *A true and correct copy of the recorded Warranty Deed is attached hereto as Exhibit 1.*

3. On or about June 30, 2017, Nobrega and Ms. Moy transferred title of said property to Achabal Technologies, Inc. (hereinafter "Achabal"). *A true and correct copy of the recorded Quitclaim Deed is attached hereto as Exhibit 2.*

4. On or about January 24, 2019, B&B lent Achabal $660,000.00, pursuant to a secured loan memorialized by a Note, Mortgage, Guaranty, and a UCC Financing Statement Form.

5. Specifically, B&B, is the holder of a Promissory Note (hereinafter "Note") secured by a Mortgage Deed, Assignment of Leases and Rents, and Security Agreement (hereinafter "Mortgage") on the subject property. B&B is the mortgagee of this Mortgage. Both the Note and Mortgage were executed and delivered by Nobrega, in his capacity as President and Secretary of Achabal, on January 24, 2019. *True and correct copies of the Note and recorded Mortgage are attached hereto as Exhibits 3 and 4, respectively.*

QUINTERO BROCHE
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

6.  The Mortgage was recorded in the Official Records of Miami-Dade County, Florida on or about January 28, 2019, and is located/identified in Official Records Book 31304, Page 2272, CFN: 2019R0053794.

7.  In addition to the Note and Mortgage, Nobrega, in his individual capacity, executed a personal Unlimited Guaranty on January 24, 2019, rendering himself personally liable to the amounts due by Achabal under this Note and Mortgage. *A true and correct copy of the Unlimited Guaranty is attached hereto as Exhibit 5.*

8.  Furthermore, B&B further secured its' interests via a UCC Financing Statement filed and recorded on or about February 28, 2019. Said Financing Statement can be located in Miami-Dade Official Records Book 31344, Page 4410-4413, CFN: 2019R0129621, as well as the Florida Secured Transactions Registry. *A true and correct copy of the UCC Financing Statement is attached hereto as Exhibit 6.*

9.  The underlying Mortgage and Note were modified on or about February 23, 2021, only extending the maturity date of the loan but otherwise maintaining all of the original payment terms and obligations.[1] The Modification was recorded in the Official Records of Miami-Dade County, Florida on or about February 23, 2021, and is located/identified in Official Records Book 32365, Page 22, CFN: 20210136561. *A true and correct copy of the Recorded Modification of Note and Mortgage (hereinafter "Modification") is attached hereto as Exhibit 7.*

10. As a result of the February 23, 2021 Modification, the material payment terms and provision governing this Note and Mortgage are as follows:

---

[1] The modification merely extended the maturity date of the Note from February 1, 2021 to February 1, 2022.

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

*a.* Loan type: **Balloon**

*b.* Principal owed: **$660,000.00**

*c.* 1st Payment Date: **March 1, 2019**

*d.* Maturity Date: **February 2, 2022 (Principal & unpaid interest due)**

*e.* Interest Rate: **9.5% per annum, 1/360 daily accrual rate**

*f.* Monthly Payment: **$5,225.00 (Interest only)**

*g.* Default Interest: **24% per annum**

*h.* Other Terms: **See Note and Mortgage attached hereto.**

 i. **Upon default in this Note, the Lender, at its option, may declare the entire unpaid Principal balance of this Note, together with accrued Interest, to be immediately due and payable without notice of demand. (N. 11.1)**

 ii. **Mortgagor shall pay or reimburse Mortgagee for all costs, charges, expenses, and reasonable attorney's fees paid or incurred by Mortgagee pursuant to this mortgage including but not limited to those costs, charges, expenses and fees paid or incurred for the payment of Imposition, insurance, completion of construction, repairs, or in any action, proceeding or dispute of any kind in which Mortgagee is a party because of any Obligation not being duly and promptly preformed or being violated, including, but not limited to, the foreclose or other enforcement of this Mortgage, any condemnation or eminent domain action involving the Mortgaged property or any part thereof, any action to protect the security thereof, or any proceeding in probate, reorganization, bankruptcy, or forfeiture in rem. All such amounts paid or incurred by Mortgagee, together with interest thereon at the Default Rate from the date incurred by Mortgagee, shall be secured by this Mortgage and shall be due and payable by Mortgagor immediately, whether or not there be notice or demand thereof. (M.)**

11. During the pendency of Nobrega's criminal case, Achabal and Nobrega defaulted on the Note and Mortgage by failing to make the required monthly installment payments. Specifically, Achabal failed to make timely payment for August 1, 2021, and thereafter, failed to pay any subsequent monthly payments as required by the subject Note and Mortgage.

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

12. As a result of Achabal and Nobrega's default, B&B filed suit on October 21, 2021, in Miami-Dade County, for breach of the Note and to foreclose on the Mortgage in case no.: *2021-23580-CA-01*.

13. Subsequent thereto, on or about October 22, 2021, B&B also filed A Notice of Lis Pendens further providing public notice of its' interest in said property. Said Notice of Lis Pendens is recorded in Miami-Dade Official Records Book 32808, Page 1894, CFN: 20210793423, as well as the Florida Secured Transactions Registry. *A true and correct copy of the recorded Notice of Lis Pendens is attached hereto as Exhibit 8*.

14. Currently, there is due and owing on the Note a principal balance of $660,000.00 together with accrued interest, and attorney's fees since Achabal and Nobrega's default on September 1, 2021.

15. B&B did not learn of the Government's claim herein until on or about May 4, 2022, when B&B's counsel, Jorge Isaac, Esq., received the Government's Notice of Forfeiture of the subject property.

## B. NOBREGA'S CRIMINAL PROCEEDINGS

16. On or about August 27, 2021, the Government filed a seven (7) count Indictment in the Southern District of Florida, case no.: 21-20442-CR-Huck, charging Jorge Luis Nobrega Rodriguez with Conspiracy to Violate the International Emergency Economic Powers Act, Conspiracy to Commit Money Laundering, and Laundering of Monetary Instruments. (D.E. 9).

17. On or about September 3, 2021, the Government filed their Notice of Lis Pendens. (D.E. 12). However, the Government failed to provide said Notice to B&B.

18. On or about March 8, 2022, Nobrega's plea agreement was accepted by the Court wherein, he agreed to the entry of a forfeiture money judgment in the amount of $3,743,337.93 and the forfeiture of substitute property including the real property subject of this claim.

5



QUINTERO BROCHE ™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

19. On or about April 28, 2022, the Government filed their unopposed Motion for Forfeiture of Property in Nobrega's case. (D.E. 36).

20. On April 29, 2022, the Court entered the preliminary Order of Forfeiture as to the Nobrega. (D.E. 38). *A copy of the subject Preliminary Order of Forfeiture is attached hereto as Exhibit 9*.

21. Unbeknownst to B&B, on or about April 29, 2022, the Government published its forfeiture notice in relation to the Nobrega prosecution and the subject property via its forfeiture.gov website.[2] *A copy of the published Forfeiture Notice is attached hereto as Exhibit 10*.

---

[2] The direct-notice requirement applicable to civil forfeitures governs criminal forfeitures as long as it is not "inconsistent with" other provisions of the criminal forfeiture statute. *United States v. Erpenbeck, 682 F.3d 472, 475 (6th Cir. 2012)*.

As set forth by the Sixth Circuit Court of Appeals in *Erpenbeck*

> Due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of" a legal action that will determine their rights to property, and to "afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).* When the government knows not whom the forfeiture affects, constructive notice by publication suffices. *Id. at 317, 70 S.Ct. 652.* **But that is not true when the government knows or reasonably should know whom to notify. As to them, the government must attempt to provide direct notice of the proceeding.** *Id. at 318–19, 70 S.Ct. 652; See also Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 797–98, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)*(requiring government to provide direct notice to mortgage holder who has a publicly recorded interest before selling property to satisfy tax lien). *Erpenbeck, at 476 (emphasis added)*.

In *Erpenbeck*, the Court granted a third party relief under Rule 60(b) based on the Government's failure to provide direct notice of the forfeiture proceedings to the bankruptcy trustee. *Id. at 472.* Specifically, the court noted that the Government's failure to notify an interested party who was readily ascertainable, ran contrary to the notice requirement of 21 U.S.C. § 853. *Id. at 478-80.* In reaching its decision, the court found that:

> A quick check of the docket would have shown the case remained open, surely the kind of "reasonably diligent effort[ ]" due process requires the government to undertake in identifying potential third-party claimants…The government's efforts to explain away its failure to notify the trustee overlook a simple reality: neither the forfeiture statute nor the Due Process Clause demands that the government undertake "heroic efforts" to provide the required notice; mailing the trustee a certified letter will suffice. *See Dusenbery v. United States, 534 U.S. 161, 170, 172–73, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).* Even though the trustee's interest in the cash was far from a mystery, the government did not take this modest step. *Id.*

The ruling in *Erpenbeck* is echoed by numerous other courts in cases where the identity of potential third party claimants is readily ascertainable, yet the Government fails to undertake this "modest step." *See United States v. Bouler, 927 F.Supp. 911, 917 (W.D.N.C.1996); United States v. Minor, 228 F.3d 352, 354, 357–59 (4th Cir.2000); Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); United States v. Estevez, 845 F.2d 1409 (7th Cir. 1988)*



QUINTERO BROCHE™

75 Valencia Avenue · Suite 800 · Coral Gables, Florida 33134
Tel: (305) 446-0303 · Fax: (305) 446-4503

22. On or about May 4, 2022, the Government sent B&B's counsel, Jorge Isaac, Esq., a Notice of Forfeiture letter of the subject property.[3] *A copy of the subject Notice of Forfeiture letter sent to B&B's counsel is attached hereto as Exhibit 11.*

23. On or about May 23, 2022, Nobrega was sentenced in connection with his case. Per the Court's Judgment imposed therein, the Court did not incorporate the Preliminary Order of Forfeiture by way of the Judgment and instead ordered the Government to file a Final Order of Forfeiture within three days of imposition of the Judgment. (D.E. 45). By virtue thereof, the Government was required to file the Final Order of Forfeiture by no later than May 26, 2022.

24. As of this filing, the Government has not filed any such Final order of Forfeiture in direct contravention to the Federal Criminal Court's directives.

**C. B&B HOLDS VALID AND SUPERIOR THIRD PARTY INTEREST TO THE SUBJECT PROPERTY, AND TO THE EXTENT THE GOVERNMENT SEEKS FORFEITURE THEREOF, IT STEPS INTO THE PROVERBIAL SHOES OF ACHABAL AND/OR NOBREGA.**

25. B&B is the original lender and mortgagee to the Note and Mortgage. B&B is and has always been the holder of the Note and Mortgage at issue herein. At no time during the dealings with Achabal and/or Nobrega giving rise to B&B's secured interest herein did the Petitioner have any knowledge, or reasonable basis to know, that Achabal and/or Nobrega were involved in any type of criminal activity subjecting them to criminal forfeiture. At no time after the dealings giving rise

---

[3] Upon receiving the subject notice, Mr. Isaac contacted AUSA Joshua Paster to discuss this matter and ascertain whether the matter could be resolved without need for exacerbated litigation. Based on the Government's response thereto, wherein the Government sought to suggest that based on its filing of a pre-trial, pre-conviction, Notice of Lis Pendens, it could effectually evade the long-standing principle that at best, the Government stands in the shoes of the Debtor/Mortgagor and is subject to all terms and conditions said Mortgagor is liable for, B&B is left no choice but to file the subject Petition and assert its rights as it relates to the subject property at issue.



QUINTERO BROCHE™

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446–0303 • Fax: (305) 446–4503

to B&B's secured interest in the subject property did B&B know, or have any reason to know, of the criminal activity undertaken by Nobrega.

26. B&B's secured interest herein was perfected on or about January 28, 2019 when the Mortgage was recorded in the Miami-Dade Official Records, thereby affording all third parties public notice of B&B's security interest in the subject property.

27. B&B never received (adequate) notice of the lis pendens filed by the Government herein. It was only after the Government recorded the lis pendens, that B&B became aware that the subject property was involved in these criminal forfeiture proceedings. Upon discovering the pendency of this action, B&B expeditiously retained the undersigned and initiated the present Petition.

28. Here, the only notice of these proceedings afforded by the Government was limited to the recording of the lis pendens and a Notice of Forfeiture letter sent to B&B's counsel, Jorge Isaac, Esq., pursuant to 21 U.S.C. § 853(n), dated May 4, 2022.

29. Given that B&B's security interest in the subject property was perfected well before the Government's arrest of Nobrega herein, or the Government providing any notice of its intent to seek criminal forfeiture against Nobrega and his interest in the subject property, its security interest herein was a matter of public record and easily ascertainable.

30. A review of the case docket herein reveals that as of the date of this filing, no Final Order of Forfeiture has been entered against Nobrega by this Court. In fact, Nobrega's Judgment entered on May 23, 2022 merely reflects that the Government "shall submit a proposed Order or Forfeiture within 3 days." (D.E. 45). Given that the 30-day deadline afforded under Section 853(n) for the filing of a Claim/Petition herein has not expired, B&B submits that this Court should accept its present Petition and allow it to present its claims herein without issue. Moreover, as no Final Order

QUINTERO BROCHE ™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

of Forfeiture appears to have been entered, the Government would not be prejudiced by the relief requested herein. However, the denial of B&B's requested relief, as set forth herein, would clearly prejudice B&B who is an innocent owner with a clear and recognizable interest in the subject property.

31. Therefore, pursuant to *21 USC § 853(n)(6)* and *18 USC § 982(b)(1)*, the Petitioner/Claimant, B&B Capital Group 26, LLC., is a bonafide purchaser for value of the right, title, and interest in the above-described subject property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.

32. In this scenario, B&B has a superior interest in this real property than the Government, and at best, the Government must step into the shoes of Nobrega and Achabal, and is liable to B&B for all defaulted upon loan obligations and resulting accrued interest, attorney's fees, and costs, as dictated by the operative loan documents. *See U.S. v. Harris, 246 F.3d 566, (6th Cir. 2001).*

33. As such, Petitioner B&B, seeks relief from this Court's Preliminary Order of Forfeiture and hereby requests that this Honorable Court hold a hearing ancillary to the criminal conviction of  Jorge Luis Nobrega Rodriguez at which Petitioner may testify and present evidence and witnesses on its own behalf pursuant to the above-referenced statutory authority governing forfeiture proceedings, that this Court amend its Preliminary Order of Forfeiture dated April 29, 2022 (D.E. 38) to fully recognize the interest of B&B Capital Group 26, LLC, as set forth herein, and further that this Court require the Government to pay B&B, upon the sale and/or other disposition of the subject property, the principal balance of $660,000.00, plus all accrued interest, attorney's fees and costs, as directed by the operative loan documents, incurred in connection with not only B&B's aforementioned foreclosure action, but also the litigation of the instant claim.

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

**WHEREFORE**, Third Party, B&B INVESTMENT'S, INC., respectfully prays that this Honorable Court grant B&B's Petition for Ancillary Hearing, enter an Order amending its Preliminary Order of Forfeiture dated April 29, 2022 (D.E. 38) to fully recognize the interest of B&B Capital Group 26, LLC, as set forth herein, and further that this Court require the Government to pay B&B, upon the sale and/or other disposition of the subject property, the principal balance of $660,000.00, plus all accrued interest, attorney's fees and costs, as directed by the operative loan documents, incurred in connection with not only B&B's aforementioned foreclosure action, but also the litigation of the instant claim, and for any other relief this Court deems just and appropriate under the circumstances.

Respectfully submitted,

**QUINTERO BROCHE, P.A.**
*Attorneys for Claimant, B&B Capital Grp. 26, LLC*

By:      /s/  *Frank Quintero, Jr.*
              FRANK QUINTERO, JR.
              Fla. Bar No.: 399167

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed via *CM/ECF* this 2<u>nd</u> day of JUNE 2022, and courtesy copies of the same furnished via email to all counsel of record.

Respectfully submitted,

**QUINTERO BROCHE, P.A.**
*Attorneys for Claimant, B&B Capital Grp. 26, LLC*
75 Valencia Avenue, Suite 800
Coral Gables, Florida 33134
Tel.: 305-446-0303/Fax: 305-446-4503
E-mail: eservice@quinterolaw.net
            fquintero@quinterolaw.net
            jpbroche@quinterolaw.net

By:      /s/ *Frank Quintero, Jr.*
            FRANK QUINTERO, JR.
            Fla. Bar No.: 399167

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***VERIFICATION ON THE FOLLOWING PAGE**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

QUINTERO BROCHE ™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

## OATH

I, <u>Izak Ben Naim</u>, in my capacity as Authorized Member of B&B Capital Group 26, LLC., declare under penalty of perjury that the foregoing is true and correct.

Executed on this **2ⁿᵈ** day of JUNE, 2022.

Izak Ben Naim
Authorized Member
B&B Capital Group 26, LLC.

Notary Public

My Commission expires: 7/5/2025

(Notary seal: NOTARY PUBLIC STATE OF FLORIDA, Judelys Viquez, My Commission # HH 148935, Expires 07/05/2025)

# EXHIBIT 1

```
CFN 2014R0364521
OR Bk 29159 Pgs 3501 - 3502; (2pgs)
RECORDED 05/20/2014 16:07:13
DEED DOC TAX 4,920.00
SURTAX 3,690.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

Prepared by:
Zachary Zurich
Law Office of Zachary Zurich, PA
7821 Fisher Island Drive
Miami Beach, FL 33109
305-852-2566

Return to:
Joaquin A. Alemany, Esquire
901 Ponce de Leon Boulevard
Suite 305
Coral Gables, Florida 33134

## WARRANTY DEED

### (STATUTORY FORM - SECTION 689.02, F.S.)

THIS INDENTURE made this 16 day of May, 2014 between C K L BUILDER GROUP, CORP., a Florida Corporation whose address is 7455 NW 41st Street, Miami, FL 33166, grantor*, and Jorge L. Nobrega and Durmelys J. Moy, as joint tenants with right of survivorship, whose post office address is 4696 NW 74th Avenue Unit 7, Miami, FL 33166 of the County of Miami-Dade, State of Florida, grantee*.

## W I T N E S S E T H :

THAT GRANTOR, for and in consideration of the sum of Eight Hundred Twenty Thousand Dollars ($820,000.00), and other good and valuable consideration, to grantor in hand paid by grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to grantee, and grantee's heirs, successors and assigns in fee simple forever, the following described real property, situate, lying and being in Miami-Dade County, Florida, to-wit:

> Unit Number 7 in Building 2 of BIG BEN COMMERCE CENTER, a Condominium according to the Declaration of Condominium thereof, as recorded in OR BK 19561 at Page 4562 of the Public Records of Miami-Dade County, Florida.
>
> a/k/a: 4696 NW 74 Avenue Unit 7, Miami , FL 33166-6447
>
> Folio: 30-3023-042-0150

TOGETHER WITH all the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

THIS CONVEYANCE is subject to taxes and assessments for the year 2014 and all subsequent years; and conditions, restrictions, limitations and easements of record, if any, without reimposing same.

AND GRANTOR hereby covenants with grantee that it is lawfully seized of said real property in fee simple, that it has good right and lawful authority to sell and convey same, that it hereby fully warrants the title to said real Property and will defend the same against the lawful claims of all persons whomsoever.

> * "Grantor" and "Grantee" are used for singular or plural, as context requires.

LAST PAGE

**Warranty Deed – Page 2**

IN WITNESS WHEREOF, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered
in our presence:

C K L BUILDER GROUP, CORP., a Florida
Corporation

By: _____
KAROLINE K LEE,  President

Witness
Name: _MICHAEL M. KWAN_

Witness
Name: _Robert Merejos_

State of Florida
County of Miami Dade

The foregoing instrument was acknowledged before me this __19__ day of May, 2014 by KAROLINE K LEE,  as president of C K L BUILDER GROUP, CORP., a Florida Corporation, [x] is personally known to me or [ ] has produced a driver's license as identification. _DL L000-511-63-969-0_

_____
Notary Public

Printed Name: _JAVI PINERO_

My Commission Expires: _____

JAVIER PINEIRO HERNANDEZ
MY COMMISSION #FF000703
EXPIRES March 19. 2017
(407) 398-0153   FloridaNotaryService.com

# EXHIBIT 2

CFN 2017R0412694
OR BK 30619 Pgs 661-662 (2Pgs)
RECORDED 07/19/2017 13:22:44
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Parcel Identification No: 30-3023-042-0150

This Instrument Prepared By
and Return to: Elizabeth Diaz valdez
Florida Title Worxs LLC
3785 NW 82 Ave
Suite 414
Doral FL 33166

# QUITCLAIM DEED

This Quitclaim Deed, made this 30th day of June , 2017, between Jorge L. Nobrega and Durmelys J. Moy, husband and wife   whose address is  4696 NW 74 Ave #7 Miami FL 33166 , Grantor, to ACHABAL TECHNOLOGIES INC., a Florida corporation, whose address is  4769 NW 72 Avenue,  Miami, FL 33166, Grantee.

Witnesseth, that the Grantor, for and in consideration of the sum of -----------TEN  DOLLARS & NO/100 (10.00)------------------DOLLARS, and other good and valuable consideration to Grantor in hand paid by Grantee, the receipt of which is hereby acknowledged, has granted, bargained and quitclaimed to the said Grantee and Grantee' heirs and assigns forever, the following described land, situate, lying and being in the County of  Miami-Dade, State of Florida, to-wit:

**Unit 7, Building 2, Big Ben Commerce Center Condominium, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 19561, Page 4562, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but is not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.**

Subject to taxes for the current year, covenants, restrictions and easements of record, if any.

To Have and to Hold the same together with all and singular the appurtenances thereunto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of Grantor, either in law or equity, for the use, benefit and profit of the said Grantee forever.

In Witness Whereof, the Grantor has hereunto set he/she hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness #1 Signature

Witness #1 Printed Name

Jorge L. Nobrega

Witness #2 Signature

DAMARIS DIAZ
Witness #2 Printed Name

Durmelys J. Moy

OR BK 30619 PG 662
LAST PAGE

**STATE OF FLORIDA**
**COUNTY OF MIAMI-DADE**

The foregoing instrument was acknowledged before me this 30th day of June , 2017, by **Jorge L. Nobrega and Durmelys J. Moy,** who is personally known to me or who has produced FDL as identification.

SEAL

_____
Notary Signature

ELIZABETH DIAZ VALDEZ
Notary Public ~ State of Florida
Commission # GG 115078
My Comm. Expires Jun 14, 2021
Bonded through National Notary Assn.

_____
Printed Notary Signature

My Commission Expires

Book30619/Page662    CFN#20170413694    Page 2 of 2

# EXHIBIT 3

**THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $660,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

## <u>PROMISSORY NOTE</u>

U.S. $660,000.00

Aventura, Florida
Date: January 24, 2019

1.    <u>Parties.</u>

      1.1    ACHABAL TECHNOLOGIES, INC., a Florida corporation (the "Borrower").

      1.2    B&B Capital Group 26 LLC, a Florida limited liability company (the "Lender").

2.    <u>Borrower's Promise to Pay.</u>  For value received, Borrower promises to pay to the order of Lender, its successors or assigns, Six Hundred Sixty Thousand and 00/100 Dollars ($660,000.00) (the "<u>Principal</u>"), plus interest (the "<u>Interest</u>") on the Principal from time to time remaining unpaid.

3.    <u>Interest Rate.</u>

      3.1    Provided no default shall have occurred under this Note, Interest shall be payable on the outstanding Principal at a fixed annual rate equal to Nine and One Half  percent (9.5%) (the "<u>Applicable Interest Rate</u>") for the period commencing on the date of this Note and continuing until the Maturity Date (as defined hereinafter).

      3.2    Notwithstanding anything contained in this Note to the contrary, upon default in this Note, Interest shall be payable at the annual rate equal to the lesser of (i) the highest rate permitted by law or (ii) twenty-four percent (24%) (the "<u>Default Rate</u>").  In accordance with Section 55.03(1), Florida Statutes (2016), Borrower hereby further agrees that the Default Rate shall be applicable to interest accruing on any judgment entered with respect to the indebtedness evidenced hereby or by any of the other Loan Documents (as such term is hereafter defined).

4.    <u>Payments.</u>

      4.1    Borrower shall pay Interest only monthly in arrears in an amount equal to Five Thousand Two Hundred Twenty-Five and 00/100 Dollars ($5,225.00), commencing on March 1, 2019, and on the first day of each and every month thereafter until the Maturity Date.

      4.2    The entire unpaid Principal and any accumulated unpaid Interest thereon shall be due and payable on the first day of Febuary, 2021 (the "<u>Maturity Date</u>").

      4.3    Interest under this Note shall be computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

DoubleTime®

4.4     All payments hereunder shall be made in lawful money of the United States of America.

4.5     In the event that the Interest Rate or the Default Rate exceeds the maximum rate of interest allowed by applicable law, as amended from time to time, in any interest period during the initial term or any extension of this Note, only the maximum rate of interest allowed shall then be charged but thereafter in any interest period or periods during which the rate is less than the maximum rate allowed by applicable law, as amended from time to time, the Interest Rate and the Default Rate shall be increased so that Lender, its successors or assigns, may collect interest in such amount as may have been charged pursuant to the terms of this Note, but which was not charged because of the limitation imposed by law.

4.6     It is the intent of the parties hereto that in no event shall the amount of interest due or payment in the nature of interest payable hereunder exceed the maximum rate of interest allowed by applicable law, as amended from time to time, and in the event any such payment is paid by the Borrower or received by the Lender, then such excess sum shall be credited as a payment of Principal, unless the Borrower shall notify the Lender, in writing, that the Borrower elects to have such excess sum returned to it forthwith.  The Lender may, in determining the maximum rate of interest allowed under applicable law, as amended from time to time, take advantage of: (i) the rate of interest permitted by Section 655.56, Florida Statutes, by reason of both Section 687.12 Florida Statutes ("Interest rates; parity among licensed lenders or creditors") and 12 United States Code, Sections 85 and 86, and (ii) any other law, rule, or regulation in effect from time to time, available to Lender which exempts Lender from any limit upon the rate of interest it may charge or grants to Lender the right to charge a higher rate of interest than that allowed by Florida Statutes, Chapter 687.

5.     Intentionally Omitted.

6.     Application of Payments.  So long as no default has occurred in this Note, all payments hereunder shall first be applied to Interest, then to Principal.  Upon default in this Note, all payments hereunder shall first be applied to costs pursuant to Section 11.2, then to Interest and the remainder to Principal.

7.     Prepayment.  Borrower may prepay this Note, but only in whole and not in part, only upon at least ten (10) days advance written notice to Lender, and only subject to the payment of: (i) all accrued and unpaid interest; (ii) all other charges, fees, costs and expenses owed to the Lender under the Loan Documents; and (iii) a prepayment premium in an amount equal to twelve (12) months of Interest (exclusive of any prepaid Interest collected at closing) less the amount of Interest previously paid on the prepaid amount (exclusive of any prepaid Interest collected at closing) shall be due and payable from Borrower to Lender if the Note is prepaid on or before the last day of the twelfth (12th) full calendar month after the date of this Note.  Borrower acknowledges that the Lender is relying on this Note being paid according to its tenor through the maturity date and may suffer damages which are incapable of calculation if the Borrower is permitted to prepay the loan.  If the Borrower elects to prepay this Note, then, without limiting the Borrower's obligations set forth above, the Maturity Date shall be deemed, for all purposes, other than computation of the prepayment charge, automatically to have been accelerated or advanced to (and this Note shall be payable in full on) the date established for prepayment in the Borrower's notice of election to prepay this Note.  For purposes of computation of the prepayment charge above, the Maturity Date shall be treated as the scheduled maturity date and shall not be deemed accelerated or advanced for that purpose.  The prepayment charge computed in accordance herewith shall be due and payable on the accelerated and advanced Maturity Date.  If this Note shall become payable in full prior to the Maturity Date due to the occurrence of any event of default under the "Loan

DoubleTime®

Documents" as defined below, or under any other documents or instruments executed in connection with this Note or the Mortgage securing this Note (the "Loan Documents") or due to the occurrence of any fire, other catastrophe, a "taking" or any other event giving rise to the Lender's right to accelerate payment, then the Borrower shall pay the Lender the prepayment charge which would have been payable as if the mortgage loan had been voluntarily prepaid on the date of such default or the date of such acceleration, as applicable. If any insurance proceeds or condemnation awards are applied in reduction of this Note, such payments shall be deemed a voluntary prepayment of this Note on the date of such application, and the Borrower shall pay the Lender a prepayment charge with respect to such repayment calculated by the Lender in the manner described above, based on the amount of the prepayment, but Lender agrees that in such event a partial prepayment shall be permitted unless Lender elects to accelerate the entire balance due hereunder as a result of such casualty or condemnation. Failure of the Borrower to make such payment within fifteen (15) days after notice of same is given by the Lender shall be deemed a default under this Note entitling the Lender to accelerate payment as if such default were specifically set forth herein and in the Loan Documents.

8.    Other Instruments. The term "Loan Documents" shall mean all and any of the documents now or hereafter executed by Borrower, by others, or by Borrower and others, in favor of Lender, which wholly or partly secure or are executed in connection with this Note, including, but not limited to (i) that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") dated of even date herewith, from Borrower, as mortgagor, in favor of Lender, as mortgagee, to be recorded in the Public Records of Miami-Dade County, Florida, encumbering certain real and personal property described therein situated in said Counties (the "Mortgaged Property"), and (ii) UCC-1 Financing Statements (collectively the "Financing Statements") (a) from Borrower as debtor, in favor of Lender, as secured party, to be recorded in the Public Records of Miami-Dade County, Florida, and (b) from Borrower, as debtor, in favor of Lender, as secured party, to be filed with the Florida Secured Transactions Registry. Reference is made to the provisions of the Loan Documents for a description of the further rights of the Lender.

9.    Place of Payment. All payments hereunder shall be made at Lender's offices at 20200 W. Dixie Highway Suite 1205, Aventura, FL 33180, or such other place as Lender may from time to time designate in writing.

10.    Default. If any payment of Principal, Interest, or other sum due Lender hereunder or under any of the Loan Documents is not paid as and when due, or if any other default occurs under any of the Loan Documents or if any obligation of Borrower under any of the Loan Documents is not fully performed prior to the expiration of any applicable grace, cure or notice periods, if any, then this Note shall be in default.

11.    Default Remedies.

11.1    Upon default in this Note, the Lender, at its option, may declare the entire unpaid Principal balance of this Note, together with accrued Interest, to be immediately due and payable without notice or demand.

11.2    If any payment of Principal, Interest, or other sum due Lender hereunder or under any of the Loan Documents is not paid as and when due, or if any other default occurs under any of the Loan Documents or if any obligation of Borrower under any of the Loan Documents is not fully performed and after the expiration of any applicable grace, notice or cure period expressly provided therefor, if any, then this Note shall be in default. Any judgment rendered on this Note shall bear

*Promissory Note - Page 3*

**DoubleTime®**

interest at the highest rate of interest permitted pursuant to Florida Statutes, Chapter 687.

12.    Late Charge.  A late charge of five percent (5%) of any payment required hereunder (other than the final payment due at maturity) shall be imposed on each and every payment, including the final payment due hereunder, not received by the Lender within five (5) days after it is due.  The late charge is not a penalty, but liquidated damages to defray administrative and related expenses due to such late payment.  The late charge shall be immediately due and payable and shall be paid by the Borrower to the Lender without notice or demand.  This provision for a late charge is not and shall not be deemed a grace period, and Lender has no obligation to accept a late payment.  Further, the acceptance of a late payment shall not constitute a waiver of any default then existing or thereafter arising in this Note.

13.    Waivers.  Borrower and any endorsers, sureties, guarantors, and all others who are, or may become liable for the payment hereof severally:  (a) waive presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, (b) consent to all extensions of time, renewals, postponements of time of payment of this Note or other modifications hereof from time to time prior to or after the maturity date hereof, whether by acceleration or in due course, without notice, consent or consideration to any of the foregoing, (c) agree to any substitution, exchange, addition, or release of any of the security for the indebtedness evidenced by this Note or the addition or release of any party or person primarily or secondarily liable hereon, (d) agree that the Lender shall not be required first to institute any suit, or to exhaust its remedies against the undersigned or any other person or party to become liable hereunder or against the security in order to enforce the payment of this Note and (e) agree that, notwithstanding the occurrence of any of the foregoing (except by the express written release by Lender of any such person), the undersigned shall be and remain, jointly and severally directly and primarily liable for all sums due under this Note.

14.    Set-Offs.  Borrower and any endorsers, sureties, guarantors, and all others who are, or who may become liable for the payment hereof, severally expressly grant to the Lender a continuing first lien security interest in and authorize and empower the Lender, at its sole discretion, at any time after the occurrence of a default hereunder to appropriate and, in such order as Lender may elect, apply to the payment hereof or to the payment of any and all indebtedness, liabilities and obligations of such parties to the Lender or any of Lender's affiliates, whether now existing or hereafter created or arising or now owned or howsoever after acquired by Lender or any of Lender's affiliates (whether such indebtedness, liabilities and obligations are or will be joint or several, direct or indirect, absolute or contingent, liquidated or unliquidated, matured or unmatured, including, but not limited to, any letter of credit issued by Lender for the account of any such parties), any and all money, general or specific deposits, or collateral of any such parties now or hereafter in the possession of the Lender.

15.    Submission to Jurisdiction.  Borrower, and any endorsers, sureties, guarantors and all others who are, or who may become, liable for the payment hereof severally, irrevocably and unconditionally (a) agree that any suit, action, or other legal proceeding arising out of or relating to this Note may be brought, at the option of the Lender, in a court of record of the State of Florida in Miami-Dade County, in the United States District Court for the Southern District of Florida, or in any other court of competent jurisdiction; (b) consent to the jurisdiction of each such court in any such suit, action or proceeding; and (c) waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any of such courts.

16.    Miscellaneous Provisions.

*Promissory Note - Page 4*

**DoubleTime**

16.1     The term Lender as used herein shall mean any holder of this Note.

16.2     Time is of the essence in this Note.

16.3     The captions of sections of this Note are for convenient reference only, and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Note.

16.4     If more than one person signs this Note, each is and shall be jointly and severally liable hereunder; and if Borrower is a general partnership, then all partners in such Borrower (and if Borrower is a limited partnership then all general partners in Borrower) shall be and remain jointly and severally liable hereunder, notwithstanding any voluntary or involuntary withdrawal or removal of such general partner from such partnerships.

16.5     This Note shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

16.6     If any provision or portion of this Note is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Note, and the remaining provisions and portions thereof shall continue in full force and effect.

16.7     This Note may not be amended, extended, renewed or modified nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by an authorized officer of the Lender.  Any waiver of any provision hereof shall be effective only in the specific instance and for the specific purpose for which given.

17.     <u>Waiver of Trial by Jury</u>.  BORROWER AND LENDER (BY ACCEPTANCE OF THIS INSTRUMENT) HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS NOTE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER ENTERING INTO THE SUBJECT LOAN TRANSACTION.

PROPER DOCUMENTARY STAMP TAXES HAVE BEEN PAID ON THIS NOTE AND EVIDENCE THEREOF APPEARS ON THE MORTGAGE.

[Signature appears on following page.]

DoubleTime®

**THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $660,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS NOTE.**

ACHABAL TECHNOLOGIES, INC., a Florida corporation

By: _____

Jorge L. Nobrega, President and Secretary

(Corporate Seal)

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me this 24th day of January, 2019 by Jorge L. Nobrega, President and Secretary of ACHABAL TECHNOLOGIES, INC., a Florida corporation, on behalf of the corporation. He [_] is personally known to me or [X] has produced a Florida Driver License as identification.

[Notary Seal]



_____
Notary Public

Printed Name: Anakrystine Vallin

My Commission
Expires: _____

DoubleTime⁵

# EXHIBIT 4



```
CFN  2019R0053794
OR BK 31304 Pgs 2272-2292 (21Pgs)
RECORDED 01/28/2019 14:21:21
MTG DOC TAX $2,310.00
INTANG TAX $1,320.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

Prepared by and return to:
Seymour N. Singer, Esq.
Seymour N. Singer, P.A.
7401 Wiles Road, Suite 230
Coral Springs, FL 33067
Tel: (954) 509-3807

File Number: BB-ACHABAL

_____[Space Above This Line For Recording Data]_____

# THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $660,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Mortgage") as of the 24th day of January, 2019 between **ACHABAL TECHNOLOGIES, INC., a Florida corporation** (the "**Mortgagor**"), as mortgagor and debtor, whose principal place of business is 4769 NW 72 Ave, Miami, FL 33166, and **B&B Capital Group 26 LLC, a Florida limited liability company** (the "**Mortgagee**") as mortgagee and secured party, whose address is 20200 W. Dixie Highway, Suite 1205, Aventura, FL 33180.

### ARTICLE I

### DEFINITIONS, HEADINGS, RULES OF CONSTRUCTION AND SECURITY AGREEMENT

1.1     Definitions.  As used in this Mortgage and in the exhibits attached hereto, the following terms shall have the following meanings herein specified, such definition to be applicable equally to the singular and plural forms of such terms:

1.1.1     Default Rate:  The Default Rate as defined in the Note.

1.1.2     Environmental Law:  Any law, enactment, statute, code, ordinance, order, rule, regulation, judgment, decree, writ, injunction, franchise, permit, certificate, license, authorization, or other direction or requirement of any Governmental Authority, as same may be amended from time to time, whether now in existence or established or hereafter enacted, promulgated, adopted, entered or issued, both within and outside the present contemplation of the parties hereto, relating to pollution or protection of the environment, including but not limited to, (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §9601-9657, (b) the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Public Law 99-499, 100 Stat. 1613, (c) the Resource Conservation and Recovery Act, 42 U.S.C. §6901-6987, (d) the Florida Resource Recovery and Management Act, Fla. Stat. §403.702-403.7893, (e) the Pollutant Spill Prevention and Control Act, Fla. Stat. §376.011-376.21, (f) any common law of nuisance or trespass, (g) any law, rule or regulation relating to emissions, discharges, releases or threatened releases of pollutants, contaminants or chemicals, or industrial, toxic or other Hazardous Substances or waste into the environment (including without limitation, ambient air, surface water, groundwater, land surface or subsurface strata), (h) any law otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of pollutants, contaminants or chemicals or industrial, toxic or other Hazardous Substances or wastes, and (i) any other designations as toxins, pollutants or contaminants by any other Governmental Authority (including, without limitation, the United States Environmental Protection Agency).

1.1.3     Events of Default:  Those events described in Article VII hereof.

1.1.4     Fixtures:  All goods now or hereafter incorporated into any structure now or hereafter erected upon or under the Land, in the manner of lumber, bricks, tile, cement, glass, metalwork, elevators, electrical systems, plumbing systems, air conditioning and heating systems, mechanical systems and the like whether or not permanently affixed, which, to the fullest extent permitted by applicable law in effect from time to time, shall be deemed fixtures and a part of the Land.

1.1.5     Future Advances:  Any loan of money from Mortgagee to Mortgagor made within twenty (20) years from the date hereof.  The total amount of such loan or loans may decrease or increase from time to time, but the total unpaid aggregate balance secured by this Mortgage at any one time shall not exceed an amount equal to twice the original principal amount of the Loan, plus interest thereon, and any disbursements made for the payment of the Impositions (whether taxes, levies or otherwise), insurance, or other liens on the Mortgaged Property, with interest on such disbursements.  The Mortgagee has no obligation, whatsoever, to make a Future Advance.



21

1.1.6   Governmental Authority:  Any (domestic or foreign) federal, state, county, municipal or other governmental department, entity, authority, commission, board, bureau, court, agency or any instrumentality of any of them.

1.1.7   Governmental Requirement:  Any law, enactment, statute, code, ordinance, order, rule, regulation, judgment, decree, writ, injunction, franchise, permit, certificate, license, authorization, or other direction or requirement of any Governmental Authority now existing or hereafter enacted, adopted, promulgated, entered, or issued applicable to Mortgagee, Mortgagor or the Mortgaged Property, including, without limitation, any Environmental Law.

1.1.8   Guarantor:  Jointly and severally any and all Persons now or hereafter guarantying the Obligations or any part thereof (collectively referred to as the "Guarantor").

1.1.9   Guaranty:  Any guaranty of payment, performance or completion executed by any Guarantor in favor of Mortgagee with respect to the Obligations.

1.1.10   Hazardous Substances:  Any hazardous, toxic or dangerous waste, substance or material including, but not limited to, any elements or compounds which are now or hereafter (a) identified in Section 101(14) of the CERCLA, 42 U.S.C. §9601(14), and as set forth in 40 C.F.R. §302, as the same may be amended from time to time, (b) determined to be toxic, a pollutant or contaminant, under any Environmental Law, (c) contained in the list of hazardous substances adopted by the United States Environmental Protection Agency, (d) defined as "petroleum" and "petroleum products" as defined in Fla. Stat. §376.301, as same may be amended from time to time, and (e) asbestos, radon, polychlorinated biphenyls and such other elements, compounds, materials, substances or waste which are otherwise dangerous, hazardous, harmful or deleterious to human or animal health or safety, or the environment.

1.1.11   Impositions:  All (a) real estate and personal property taxes and other taxes and assessments, public or private; utility rates and charges including those for water and sewer; all other governmental and non-governmental charges and any interest or costs or penalties with respect to any of the foregoing; and charges for any public improvement, easement or agreement maintained for the benefit of or involving the Mortgaged Property, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever that at any time prior to or after the execution of this Mortgage may be assessed, levied or imposed upon the Mortgaged Property or the Rent or income received therefrom, or any use or occupancy thereof, (b) other taxes, assessments, fees and governmental and non-governmental charges levied, imposed or assessed upon or against Mortgagor or any of its properties and (c) taxes levied or assessed upon this Mortgage, the Note, and the other Obligations, or any of them.

1.1.12   Improvements:  All buildings, structures, appurtenances and improvements, including all additions thereto and replacements and extensions thereof, now constructed or hereafter to be constructed under, on or above the Land, which term includes any part thereof.

1.1.13   Junior Mortgage:  Any mortgage permitted by Mortgagee which now or hereafter encumbers all or any portion of the Mortgaged Property and which is junior or subordinate to the lien of this Mortgage, which term shall collectively refer to all such mortgages and the note or notes secured thereby.

1.1.14   Land:  The real property described in Exhibit "A" attached hereto and made a part hereof, together with all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, projections, appurtenances, water rights including riparian and littoral rights, streets, ways, alleys, and strips and gores of land now or hereafter in anyway belonging, adjoining, crossing or pertaining to the Land.

1.1.15   Leases:  Any and all other leases, subleases, licenses, concessions, or grants of other possessory interests, together with the security therefor, now or hereafter in force, oral or written, covering or affecting the Mortgaged Property or any part thereof.

1.1.16   Loan:  The Six Hundred Sixty Thousand and 00/100 Dollars ($660,000.00) loan evidenced by the Note.

1.1.17   Loan Documents:  Any document or instrument executed, submitted, or to be submitted by Mortgagor or others in connection with the Loan, including but not limited to the: (a) Note, (b) this Mortgage, (c) the Guaranty, (d) financing statements, (e) security agreements, (f) environmental indemnity agreements and (g) any other document or instrument executed in connection with the Loan.

1.1.18   Mortgaged Property:  The Land, Improvements, Fixtures, Leases, Rents and Personal Property together with:

(a)   all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Mortgaged Property or any part thereof under the power of eminent domain, or by agreement in lieu thereof, or for any damage thereto caused by any governmental action (whether by such taking or otherwise), such as without limitation, any award for change of grade of streets;

(b)   all judgments, awards and settlements hereafter made, and all insurance proceeds hereafter paid for any damage to the Mortgaged Property, and all unearned insurance premiums on any insurance policies maintained by the Mortgagor pursuant to this Mortgage;

(c)   all awards and refunds hereafter made with respect to any Imposition; and

(d)   the estate, right, title, interest, privilege, claim or demand whatsoever of Mortgagor, now or hereafter, either at law or in equity, in and to the Mortgaged Property.

The term Mortgaged Property includes any part of the foregoing property described as Mortgaged Property, and all proceeds, products, replacements, improvements, betterments, extensions, additions, substitutions, renewals, accessories, and appurtenances thereto and thereof.

1.1.19   Mortgagee:  B&B Capital Group 26 LLC, a Florida limited liability company its successors and/or assigns.

1.1.20   Mortgagor:  ACHABAL TECHNOLOGIES, INC., a Florida corporation.

*Florida Mortgage - Page 2*

1.1.21   Note:  That certain Promissory Note dated of even date with this Mortgage, made by Mortgagor, payable to the order of Mortgagee in the original principal amount of   Six Hundred Sixty Thousand and 00/100 Dollars ($660,000.00) (the "Note"), and any other note given to Mortgagee evidencing a Future Advance as any of said notes may from time to time hereafter be modified, amended, extended or renewed.

1.1.22   Obligations:

(a)    Any and all of the indebtedness, liabilities, covenants, promises, agreements, terms, conditions, and other obligations of every nature whatsoever, whether joint or several, direct or indirect, absolute or contingent, liquidated or unliquidated, of Mortgagor and Guarantor, or any of them, to Mortgagee, evidenced by, secured by, under and as set forth in the Note, this Mortgage, the Guaranty or the other Loan Documents;

(b)    Any and all other indebtedness, liabilities and obligations of every nature whatsoever (whether or not otherwise secured or to be secured) of Mortgagor (whether as maker, endorser, surety, guarantor or otherwise) to Mortgagee or any of Mortgagee's affiliates, whether now existing or hereafter created or arising or now owned or howsoever hereafter acquired by Mortgagee or any of the Mortgagee's affiliates, whether such indebtedness, liabilities and obligations are or will be joint or several, direct or indirect, absolute or contingent, liquidated or unliquidated, matured or unmatured, including, but not limited to, any letter of credit issued by Mortgagee for the account of Mortgagor; together with all expenses, attorneys' fees, paralegals' fees and legal assistants' fees incurred by Mortgagee in the preparation, execution, perfection or enforcement of any document relating to any of the foregoing; and

(c)    Any and all Future Advances.

1.1.23   Intentionally Omitted.

1.1.24   Partnership:  Any general or limited partnership, joint venture, or other form of partnership, howsoever designated.

1.1.25   Permitted Title Exceptions:  Those matters, if any, described in Schedule B to the title insurance policy insuring Mortgagee's interest in this Mortgage.

1.1.26   Person:  Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization, government, or agency or political subdivision thereof, or any other form of entity.

1.1.27   Personal Property:  All of the following property of Mortgagor whether now owned or existing, or hereafter acquired or arising, located in, on, pertaining to, used or intended to be used in connection with or resulting or created from the ownership, development, management, or operation of the Land:

(a)    all Improvements (to the extent same are not deemed to be real property) and landscaping;

(b)    all Fixtures (to the extent same are not deemed to be real property) and goods to become Fixtures;

(c)    all accounts, accounts receivable, other receivables, contract rights, chattel paper, instruments and documents; any other obligations or indebtedness owed to Mortgagor arising from the Land; all rights of Mortgagor to receive any performance or any payments in money or kind; all guaranties of the foregoing and security therefor; all of the right, title and interest of Mortgagor in and with respect to the goods, services, or other property that gave rise to or that secure any of the foregoing, and all rights of Mortgagor as an unpaid seller of goods and services, including, but not limited to, the rights to stoppage in transit, replevin, reclamation, and resale;

(d)    all goods, including without limitation, all machinery, equipment, furniture, furnishings, building supplies and materials, appliances, business machines, tools, aircraft and motor vehicles of every kind and description, and all warranties and guaranties for any of the foregoing;

(e)    all inventory, merchandise, raw materials, parts, supplies, work-in-process and finished products intended for sale, of every kind and description, in the custody or possession, actual or constructive, of Mortgagor including such inventory as is temporarily out of the custody or possession of Mortgagor, and any returns upon any accounts and other proceeds resulting from the sale or disposition of any of the foregoing, including, without limitation, raw materials, work-in-process, and finished goods;

(f)    all general intangibles, including without limitation, corporate or other business records and books, computer records whether on tape, disc or otherwise stored, blueprints, surveys, architectural or engineering drawings, plans and specifications, trademarks, tradenames, goodwill, telephone numbers, licenses, governmental approvals, franchises, permits, payment and performance bonds, tax refund claims, and agreements with utility companies, together with any deposits, prepaid fees and charges paid thereon;

(g)    all Leases and Rents (to the extent same are not deemed to be real property);

(h)    all judgments, awards of damages and settlements from any condemnation or eminent domain proceedings regarding the Land, the Improvements or any of the Mortgaged Property;

(i)    all insurance policies required by this Mortgage, the unearned premiums therefor and all loss proceeds thereof;

(j)    all rights of Mortgagor as "developer," "declarant" or "sponsor" under any declaration or other document encumbering the Land or any portion thereof;

(k)    all rights to water and sewer connections and transferable development rights and transportation, school, water and road impact fee credits;

*Florida Mortgage - Page 3*

(l)      all other personal property, including, without limitation, building permits, surveys, architectural and engineering plans and specifications, shop drawings, governmental approvals, licenses, agreements with any utility companies (together with any deposits, prepaid fees and charges paid thereon) and any other consents, approvals and rights which it may now or hereafter own with respect to or in connection with the Mortgaged Property, management contracts, construction contracts, architectural contracts, service contracts, engineering contracts, advertising contracts, contracts for purchase and sale of any of the Mortgaged Property, purchase orders, equipment leases, monies in escrow accounts, reservation agreements, prepaid expenses, deposits and down payments with respect to the sale or rental of any of the Mortgaged Property, options and agreements with respect to additional real property for use or development of the Mortgaged Property, end-loan commitments, surveys, abstracts of title, all brochures, advertising materials, condominium documents and prospectuses; and

(m)      all proceeds, products, replacements, additions, betterments, extensions, improvements, substitutions, renewals and accessions of any and all of the foregoing.

1.1.28      Rents:  All of the rents, royalties, issues, revenues, income, profits, security deposits and other benefits whether past due, or now or hereafter arising from the Mortgaged Property and the occupancy, use and enjoyment thereof.

1.2      Rules of Construction.  The use of any gender shall include all other genders.  The singular shall include the plural and the plural shall include the singular.  The word "or" is not exclusive and the use of the word "and" may be conjunctive or disjunctive in the sole and absolute discretion of Mortgagee.  The captions of Articles, Sections and Subsections of this Mortgage are for convenient reference only, and shall not affect the construction or interpretation of any of the terms and provisions set forth herein.

1.3      Security Agreement.  This Mortgage constitutes a "Security Agreement" within the meaning of and shall create a security interest under the Uniform Commercial Code-Secured Transactions as adopted by the State of Florida, with respect to the Fixtures, Leases, Rents and Personal Property.  A carbon, photographic or other reproduction of this Mortgage or of any financing statement shall be sufficient as a financing statement.  The debtor's principal place of business and the secured party's address is set forth in the introduction to this Mortgage.

## ARTICLE II
## GRANT

2.1      Grant.  For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to secure the payment, observance, performance and discharge of the Obligations, Mortgagor does by these presents give, transfer, grant, bargain, sell, alien, remise, release, assign, mortgage, hypothecate, deposit, pledge, set over, confirm, convey and warrant unto Mortgagee all estate, right, title and interest of Mortgagor in and to the Mortgaged Property, whether now owned or held or hereafter acquired by Mortgagor, subject, however, to the Permitted Title Exceptions, to have and to hold the Mortgaged Property unto Mortgagee, its successors and assigns forever.

2.2      Condition of Grant.  Subject to the provisions of this Mortgage, the condition of these presents is such that if Mortgagor shall pay, observe, perform and discharge the Obligations, or cause same to be paid, observed, performed and discharged in strict accordance with the terms thereof, then this Mortgage and the estates, interests, rights and assignments granted hereby shall be null and void, but otherwise shall remain in full force and effect.

2.3      Subrogation.  The Mortgagee is hereby subrogated to the claims and liens of all parties whose claims or liens are fully or partially discharged or paid with the proceeds of the indebtedness secured by this Mortgage, notwithstanding that such claims or liens may have been cancelled and satisfied of record.

## ARTICLE III
## ASSIGNMENT OF LEASES AND RENTS

3.1      Assignment.  The Mortgagor does hereby absolutely and unconditionally assign and transfer to Mortgagee all of Mortgagor's estate, right, title and interest in and to the Leases and Rents, to have and to hold the Leases and Rents unto Mortgagee, its successors and assigns forever.  From time to time, upon request of Mortgagee, Mortgagor shall give further evidence of this assignment to Mortgagee by executing and delivering to Mortgagee specific assignments of the Leases and Rents, in form and content approved by Mortgagee.  All such specific assignments shall be of the same dignity and priority as this Mortgage.  From time to time, upon request of Mortgagee, Mortgagor shall also execute and deliver to Mortgagee any notification to tenants or other document reasonably required by Mortgagee.

3.2      Payment of Rents to Mortgagor, as Trustee, Until Default.  So long as no Event of Default has occurred, Mortgagor may, as trustee for the use and benefit of Mortgagee, collect, receive and accept the Rents as they become due and payable (but in no event for more than two (2) months in advance); provided, however, that if the Rents exceed the payments due under the Note, the Mortgagor may use such excess, first, for the operation and benefit of the Mortgaged Property and, second, for the general benefit of the Mortgagor.  Upon the occurrence of an Event of Default Mortgagee may, at its option, remove the Mortgagor as trustee for the collection of the Rents and appoint any other person including, but not limited to, itself as a substitute trustee to collect, receive, accept and use all such Rents in payment of the Obligations, in such order as Mortgagee shall elect in its sole and absolute discretion, whether or not Mortgagee takes possession of the Mortgaged Property.  Mortgagor hereby directs each of the respective tenants under the Leases, and any rental agent, to pay to Mortgagee all such Rents, as may now be due or shall hereafter become due, upon demand for payment thereof by Mortgagee without any obligation on the part of any such tenant or rental agent to determine whether or not an Event of Default has in fact occurred.  Upon an Event of Default, the permission hereby given to Mortgagor to collect, receive and accept such Rents as trustee shall terminate and such permission shall not be reinstated upon a cure of the Event of Default without Mortgagee's specific written consent.  Exercise of Mortgagee's rights under this Section, and the application of any such Rents to the Obligations, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto, but shall be cumulative and in addition to all other rights and remedies of Mortgagee.

*Florida Mortgage - Page 4*



3.3     Performance Under Leases.  Mortgagor covenants that it shall, at its sole cost and expense, (a) duly and punctually perform and discharge, or cause to be performed and discharged, all of the obligations and undertakings of Mortgagor or its agents under the Leases, (b) use reasonable efforts to enforce or secure, or cause to be enforced or secured, the performance of each and every obligation and undertaking of the respective tenants under the Leases, (c) promptly notify Mortgagee if Mortgagor receives any notice from a tenant or purchaser, as applicable claiming that Mortgagor is in default under a Lease and (d) appear in and defend any action or proceeding arising under or in any manner connected with the Leases.

3.4     Leases In Good Standing.  All Leases are in full force and effect, and there are no defaults thereunder or any defenses or offsets thereto on the part of any tenant.

3.5     Provisions of Leases and Approval of Tenants.  All Leases shall be inferior and subordinate to the lien of this Mortgage and the terms of each Lease shall so expressly provide.  Mortgagor covenants that all Leases hereafter entered into by Mortgagor shall be in form and substance reasonably satisfactory to Mortgagee.  Further, following the occurrence of a default, the Mortgagee specifically reserves the right to approve all proposed tenants, and any assignee or sublessee of any existing tenant, which approval shall not be unreasonably withheld, delayed or conditioned.

3.6     Termination or Modification.  Mortgagor covenants that, following the occurrence of an Event of Default, it shall not, without the prior express written consent of Mortgagee (which consent shall not be unreasonably withheld, delayed or conditioned), enter into a Lease, or modify, terminate, extend, amend, or consent to the cancellation or surrender of any Lease, or permit any tenant, as applicable under any Lease to assign or sublet, as applicable, its rights thereunder.

3.7     Delivery of Executed Leases.  Mortgagor covenants that it shall furnish Mortgagee with executed copies of all Leases within ten (10) days after the execution thereof.

3.8     No Obligation of Mortgagee.  This Assignment shall not be deemed or construed to constitute Mortgagee as a mortgagee in possession of the Mortgaged Property nor shall it obligate Mortgagee to take any action or to incur expenses or perform or discharge any obligation, duty or liability of Mortgagor under any Lease.

3.9     Cumulative Remedies.  Each and every right, remedy and power granted to Mortgagee by this Article shall be cumulative and in addition to every other right, remedy and power given by the Loan Documents and now or hereafter existing in equity, at law, or by virtue of statute or otherwise.  The failure of Mortgagee to avail itself of any of its rights, remedies and powers shall not be construed or deemed to be a waiver thereof.

3.10     Notification of Mortgagee's Rights.  Mortgagee shall have the right, but not the obligation, at any time and from time to time, to notify any tenant under any Lease of the rights of Mortgagee as provided in this Article III and Mortgagor, upon demand from Mortgagee, shall confirm to such tenant the existence of such rights.

3.11     Management and Leasing.  The Mortgagor covenants that the Mortgaged Property shall be managed by the Mortgagor or by a management company which shall have been approved in writing by the Mortgagee and pursuant to a management agreement which shall have been approved in writing by the Mortgagee prior to the execution thereof, which approval shall not be unreasonably withheld, delayed or conditioned.  If, after the occurrence of a default, in the judgment of Mortgagee, the Mortgaged Property is not being properly managed, then Mortgagee may require Mortgagor to employ a qualified property manager approved by Mortgagee.  In the event Mortgagor shall fail to select a company approved by Mortgagee within twenty (20) days after Mortgagee shall request Mortgagor to do so pursuant to this Subsection 3.11, such failure shall constitute an Event of Default under this Mortgage.

3.12     Leasing Commission.  Mortgagor covenants that every agreement to pay leasing commissions with respect to the leasing of space in the Mortgaged Property, or any part thereof, are and shall be subject, subordinate and inferior to the right of Mortgagee, so that in the event Mortgagee acquires title to the Mortgaged Property either at a foreclosure sale or by other means, Mortgagee will be exonerated and discharged from all liabilities for the payment of any such commissions or compensations.

3.13     Attorney-in-Fact.  To further effectuate Mortgagee's rights under this Article III, Mortgagor hereby constitutes and irrevocably appoints Mortgagee its true and lawful attorney-in-fact, which appointment is coupled with an interest, with full power of substitution, and empowers said attorney or attorneys in the name of Mortgagor, but at the option of said attorney-in-fact, to (a) collect and receive the Rents and to issue receipts therefor, (b) to make, enter into, extend, modify, amend, terminate, consent to the cancellation or surrender of any Lease, or permit any tenant to assign or sublet its rights thereunder, (c) to execute, acknowledge and deliver any and all instruments and documents that Mortgagee may deem necessary or proper to implement its rights as provided in this Article III, and (d) to perform and discharge any and all obligations and undertakings of Mortgagor under any Lease; provided, however, that Mortgagee shall not exercise the power of attorney granted in this Section 3.13 unless an Event of Default shall have occurred.

3.14     Other Assignments.  Mortgagor shall not further assign or transfer the Leases or Rents except in favor of Mortgagee as provided in this Article III, and shall not create or permit to be created or to remain, any mortgage, pledge, lien, encumbrance, claim, or charge on the Leases or Rents.  Any transaction prohibited under this Section shall be null and void.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES

4.1     Representations and Warranties.  Mortgagor hereby represents and warrants to Mortgagee that:

4.1.1     Incorporation, Power, Authority, Etc.  Mortgagor, (i) is duly organized, validly existing and in good standing under the laws of the state or country of its formation, (ii) has the power and authority to own its properties and to carry on its business as now being

*Florida Mortgage - Page 5*



conducted, and there are no outstanding rights or options to acquire any additional shares, and its shares have not been pledged or encumbered in any manner whatsoever, (iii) is qualified to do business in the State of Florida, (iv) is in compliance with all Governmental Requirements, and (v) has not amended or modified its by-laws except as previously disclosed in writing to Mortgagee prior to the execution hereof.

 4.1.2 Validity of Loan Documents. (a) The execution, delivery and performance by Mortgagor, of the Loan Documents, and the borrowing evidenced by the Note, (i) are within the powers and purposes of Mortgagor, as applicable, (ii) have been duly authorized by all requisite action of Mortgagor, as applicable, (iii) do not require the approval of any Governmental Authority, and (iv) will not violate any Governmental Requirement, the articles of incorporation and bylaws of Mortgagor or any indenture, agreement or other instrument to which Mortgagor is a party or by which it or any of its property is bound, or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated by the provisions of the Loan Documents; and (b) the Loan Documents, constitute the legal, valid and binding obligations of Mortgagor, as applicable, and other obligors named therein, if any, in accordance with their respective terms.

 4.1.3 Financial Statements. All balance sheets, statements of profit and loss, and other financial data that have been given to Mortgagee with respect to the Mortgagor and Guarantors, (a) are complete and correct in all material respects, (b) accurately present the financial condition of said parties as of the dates, and the results of its or their operations, for the periods for which the same have been furnished, and (c) have been prepared in accordance with generally accepted accounting principles consistently followed throughout the periods covered thereby; all balance sheets disclose all known liabilities, direct and contingent, as of their respective dates; and there has been no change in the condition of the Mortgagor or Guarantors, financial or otherwise, since the date of the most recent financial statements given to Mortgagee with respect to said parties, other than changes in the ordinary course of business, none of which changes has been materially adverse.

 4.1.4 Other Agreements. Mortgagor is not a party to any agreement or instrument materially and adversely affecting it or its present or proposed businesses, properties or assets, operation or condition, financial or otherwise, and Mortgagor is not in default in the performance, observance or fulfillment of any of the material obligations, covenants or conditions set forth in any agreement or instrument to which it is a party.

 4.1.5 Other Information. All other information, including reports, financial statements, certificates, papers, data and otherwise, given and to be given to Mortgagee with respect (a) to Mortgagor or any Guarantor, (b) to the Loan and (c) to others obligated under the terms of the Loan Documents, are true, accurate and correct in all material respects and complete.

 4.1.6 Title. Mortgagor is indefeasibly seized of and has and will have good and marketable fee simple title to the Land and Improvements free and clear of any and all mortgages, liens, encumbrances, claims, charges, equities, covenants, conditions, restrictions, easements, rights-of-way and all other matters affecting the Land and Improvements, whether or not of record, except for the Permitted Title Exceptions. Mortgagor has and will have good, absolute and marketable title to the Fixtures and Personal Property all free and clear of any and all liens, charges, encumbrances, security interests and adverse claims whatsoever, except those in favor of Mortgagee. Mortgagor will preserve its title to the Mortgaged Property and will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien of this Mortgage against the claims of all persons and parties whomsoever.

 4.1.7 No Violations. No Governmental Requirement (including, but not limited to, 21 U.S.C. §§811 and 881, and 18 U.S.C. §§1961), and no covenant, condition, restriction, easement or similar matter affecting the Land or Improvements has been violated, and Mortgagor has not received any notice of violation from any Governmental Authority or any other person with respect to any of the foregoing matters.

 4.1.8 Taxes. Mortgagor has filed all federal, state, county and municipal income tax returns required to have been filed by it, and has paid all taxes that have become due pursuant to such returns, pursuant to any assessments received by it or pursuant to law, and Mortgagor does not know of any basis for additional assessment with respect to such taxes or additional taxes. The Land is assessed separately from all other adjacent land for the purposes of real estate taxes and there is no intended public improvements which may involve any charge being levied or assessed, or which may result in the creation of any lien upon the Mortgaged Property.

 4.1.9 Litigation. There are no judgments outstanding against Mortgagor and there is no action, suit, proceeding, or investigation now pending (or to the best of Mortgagor's knowledge after diligent inquiry, threatened) against, involving or affecting Mortgagor or the Mortgaged Property, or any part thereof, at law, in equity or before any Governmental Authority that if adversely determined as to the Mortgaged Property or as to Mortgagor would result in a material adverse change in the business or financial condition of the Mortgagor or Mortgagor's operation and ownership of the Mortgaged Property, nor is there any basis for such action, suit, proceeding or investigation.

 4.1.10 Utilities. There is available to the Land and Improvements through public or private easements or rights-of-way abutting or crossing the Land (which would inure to the benefit of Mortgagee in case of enforcement of this Mortgage) a water supply and a sanitary sewer service or septic tank system approved by all health and other authorities having jurisdiction, and electric, gas (if applicable) and telephone service, all of sufficient capacity to serve the needs of the Land and Improvements according to their intended purpose.

 4.1.11 Condition of Mortgaged Property. The Mortgaged Property or any part thereof, now existing, is not damaged or injured as a result of any fire, explosion, accident, flood or other casualty. The Improvements, if any, as of the date of this Mortgage, are free of any defects in material, structure and construction and do not violate any Governmental Requirements. There is no existing, proposed or contemplated plan to modify or realign any street or highway or any existing, proposed or contemplated eminent domain proceeding known to Mortgagor that would result in the taking of all or any part of the Mortgaged Property or that would adversely affect the use or the operation of the Mortgaged Property.

 4.1.12 Zoning. The Land is zoned so as to permit the Land and Improvements to be used for their intended purpose.

 4.1.13 No Default. No default or Event of Default exists under any of the Loan Documents; and no event has occurred and is continuing which, with notice or the lapse of time, or both, would constitute a default under any provision thereof.

*Florida Mortgage* - Page 6



4.1.14   <u>Fictitious Name Statute</u>.   Mortgagor, if applicable, has duly complied with all of the requirements of the Florida Fictitious Name Statute.

4.1.15   <u>Junior Mortgage</u>.   No Junior Mortgage, if any, existing as of the date hereof requires the consent of any of the holders thereof to the Loan, the execution and delivery of the Loan Documents, or to any transaction contemplated under the Loan Documents.   All Junior Mortgages existing as of the date hereof, if any, are in good standing, all principal, interest and other payments due thereunder have been paid in accordance with the terms thereof, there is no default thereunder and no event has occurred which with due notice or the lapse of time, or both, would constitute a default thereunder.

4.1.16   <u>Environmental Contamination/Hazardous Substances</u>.   To the best of Mortgagor's knowledge, Mortgagor and the Mortgaged Property are in full compliance with all Environmental Laws, and there are no civil, criminal or administrative actions, suits, demands, claims, hearings, notices or demand letters, notices of violation, investigations, or proceedings pending or threatened against the Mortgagor or the Mortgaged Property relating in any way to any Environmental Law or any agreement, plan, order, decree, judgment, injunction, notice or demand letter issued, entered, promulgated or approved under any Environmental Law.   To the best of Mortgagor's knowledge, there have never been nor are there currently any Hazardous Substances located on, in, or under the Mortgaged Property or used in connection therewith in violation of applicable law, and neither Mortgagor nor, to the best of Mortgagor's knowledge, any other person has ever used the Mortgaged Property for the manufacture, processing, distribution, use, transport, handling, treatment, storage, disposal, emission, discharge or release of any Hazardous Substance.   No notice or advice has been received by Mortgagor of any condition or state of facts that would be contributing to a claim of pollution or any other damage to the environment by reason of the conduct of any business on the Mortgaged Property or operation of the Mortgaged Property, whether past or present.

4.1.17   <u>Representations and Warranties in Other Loan Documents</u>.   All of the representations and warranties contained in the other Loan Documents are true and correct.

4.1.18   <u>USA Patriot Act</u>.   Mortgagor warrants and represents to Mortgagee neither the Mortgagor nor any affiliate thereof, is identified in any list of known or suspected terrorists published by any United States government agency, (individually, as each such list may be amended or supplemented from time to time, referred to as a "Blocked Persons List") including, without limitation, (i) the annex to Executive Order 13224 issued on September 23, 2001 by the President of the United States and (ii) the Specially Designated Nationals List published by the United States Office of Foreign Assets Control.

4.2   <u>Reliance on Representations</u>.   The Mortgagor acknowledges that the Mortgagee has relied upon the Mortgagor's representations, has made no independent investigation of the truth thereof, is not charged with any knowledge contrary thereto that may be received by an examination of the public records in Tallahassee, Florida and wherein the Land is located, or that may have been received by any officer, director, agent, employee or shareholder of Mortgagee.

**ARTICLE V**
**AFFIRMATIVE COVENANTS**

5.1   <u>Payment and Performance</u>.   Mortgagor shall promptly pay and punctually perform, or shall cause to be promptly paid and punctually performed, all of the Obligations as and when due and payable.

5.2   <u>Existence</u>.   Mortgagor shall preserve and keep in full force and effect its existence, rights, franchises, trade names and qualification to transact business in the State of Florida.

5.3   <u>Compliance With Laws</u>.   Mortgagor shall promptly and faithfully comply with, conform to and obey all Governmental Requirements and the rules and regulations now existing or hereafter adopted, that may be applicable to Mortgagor or to the Mortgaged Property or to the use or manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of the Mortgaged Property, whether or not such Governmental Requirement or rule or regulation shall necessitate structural changes or improvements or interfere with the use or enjoyment of the Mortgaged Property.

5.4   <u>Impositions</u>.

5.4.1   Mortgagor shall pay all Impositions on the Mortgaged Property and all taxes levied or assessed upon this Mortgage, the Note and the Obligations, or any of them.   In the event of the passage, after the date of this Mortgage, of any law (i) making it illegal for the Mortgagor to pay the whole or any part of the Impositions, or charges or liens herein required to be paid by Mortgagor, or (ii) rendering the payment by Mortgagor of any and all taxes levied or assessed upon this Mortgage, the Note, or the Obligations or the interest in the Mortgaged Property represented by this Mortgage unlawful, or (iii) rendering the covenants for the payment of the matters set forth in Subparts (i) and (ii) of this Subsection by Mortgagor legally inoperative, the Mortgagor shall pay, upon demand, the entire unpaid Obligations notwithstanding anything in the Note, this Mortgage, or the other Loan Documents to the contrary.

5.4.2   Mortgagor shall pay all ad valorem taxes on the Mortgaged Property on or before December 1st of each year in which they become due on the Mortgaged Property, and shall deliver to Mortgagee tax receipts evidencing said payment on or before December 31st of each year.   Mortgagor shall also deliver to Mortgagee receipts evidencing the payment of all other Impositions within thirty (30) days after same become due and payable or before same shall become delinquent, whichever is sooner.

5.5   <u>Insurance</u>.

5.5.1   Mortgagor shall obtain, maintain and keep in full force and effect during the term of this Mortgage, with all premiums paid thereon, and without notice or demand, the following insurance with respect to the Mortgaged Property:

*Florida Mortgage* - Page 7



(a) All-Risk (Special) Hazard Insurance ("All-Risk Hazard Insurance") reflecting coverage in such amounts as Mortgagee may reasonably require, but in no event less than 100% of the full replacement cost of the Mortgaged Property that includes: (A) a mortgage endorsement naming the Mortgagee as mortgagee, which endorsement shall provide that the mortgagee's coverage will not be invalidated by a foreclosure or the acquisition of the Mortgaged Property by a deed in lieu thereof, a change in ownership of the Mortgaged Property, a more hazardous use of the Mortgaged Property or a loss caused by the neglect of the owner of the Mortgaged Property, provided that the mortgagee pays any premium demanded should the owner of the Mortgaged Property fail to do so; the aforesaid mortgage endorsement (which creates a separate agreement between the insurance company and the mortgagee) shall also specifically cover and apply to that portion of the Mortgaged Property constituting Personal Property; (B) a replacement cost endorsement, (C) a stipulated value/agreed amount endorsement, (D) boiler explosion coverage, if applicable, (E) sprinkler leakage coverage, if applicable, (F) vandalism and malicious mischief coverage, and (G) flood insurance, if the Mortgaged Property is in a designated flood plain area. Such policy shall provide that any and all loss payments thereunder be payable to Mortgagee alone and not jointly with Mortgagor. In addition, consequential and resulting losses from an insured peril shall also be covered.

(b) General Comprehensive Public Liability Insurance ("Liability Insurance") against claims for bodily injury, death and property damage, occurring in, on, or about the Mortgaged Property, in such amounts as may be required by Mortgagee, but in no event less than $1,000,000.00 per occurrence ($2,000,000.00 aggregate) for bodily injury and property damage. Such policy shall include an additional insured endorsement naming the Mortgagee. The Mortgagor's general contractor (if applicable) shall also carry the aforesaid insurance coverage;

(c) Workers' Compensation Insurance ("Workers' Compensation") in the statutory amount, naming the Mortgagor as owner of the Mortgaged Property; and

(d) Insurance in such amounts and against such other casualties and contingencies as may from time to time reasonably be required by Mortgagee, including but not limited to business interruption insurance ("Other Insurance").

5.5.2 All policies of insurance required hereunder shall: (i) be written by carriers which are licensed or authorized to transact business in the State of Florida, and are rated "A" or higher, Class X or higher, according to the latest published Best's Key Rating Guide and which shall be otherwise acceptable to Mortgagee in all other respects, (ii) provide that the Mortgagee shall receive thirty (30) days' prior written notice from the insurer before a cancellation, modification, material change or non-renewal of the policy becomes effective, (iii) be written with a deductible of not more than $5,000.00 and for such amounts as are sufficient to prevent the Mortgagor from becoming a co-insurer thereunder, and (iv) be otherwise satisfactory to Mortgagee.

5.5.3 Mortgagor shall not, without the prior written consent of Mortgagee, take out separate insurance concurrent in form or contributing with regard to any insurance coverage required by this Mortgage.

5.5.4 At all times during the term of this Mortgage, Mortgagor shall have delivered to Mortgagee the original (or a certified copy) of all policies of insurance required hereby, together with receipts or other evidence that the premiums therefor have been paid.

5.5.5 Not less than thirty (30) days prior to the expiration date of any insurance policy, Mortgagor shall deliver to Mortgagee the original (or certified copy), or the original certificate, as applicable, of each renewal policy, together with receipts or other evidence that the premiums therefor have been paid.

5.5.6 The delivery of any insurance policy and any renewals thereof, shall constitute an assignment thereof to Mortgagee, and Mortgagor hereby grants to Mortgagee a security interest in all such policies, in all proceeds thereof and in all unearned premiums therefor.

5.6 Tax and Insurance Escrow.

5.6.1 Supplementing the provisions of Section 5.5 hereof, and if required by Mortgagee after the occurrence of an Event of Default, Mortgagor shall pay to Mortgagee on the payment date of installments of principal and interest as provided in the Note, together with and in addition to such installments of principal and interest, an installment of the insurance premiums for such insurance as is required hereunder, next due on the Mortgaged Property in an amount sufficient, as estimated by Mortgagee, to accumulate the sum required to pay such insurance, as applicable, thirty (30) days prior to the due date thereof. Amounts held hereunder shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Mortgagee, and no interest shall be payable with respect thereto. Upon demand of Mortgagee, Mortgagor shall deliver to Mortgagee, within ten (10) days after such demand, such additional money as is necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such insurance premiums when due. In case of an Event of Default, Mortgagee may apply any amount under this Section remaining to Mortgagor's credit to the reduction of the Obligations, at such times and in such manner as Mortgagee shall determine.

5.6.2 Supplementing the provisions of Section 5.4 hereof, Mortgagor shall, concurrently with the payment of interest as provided in the Note, deposit in an escrow account established with Mortgagee, such amounts as may be necessary such that on November 1st of each year there shall be sufficient funds in said escrow account that Mortgagee may pay the Impositions for the Mortgaged Property and obtain the 4% discount available thereupon from the applicable governmental agency. Amounts held hereunder shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Mortgagee and no interest shall be payable with respect thereto unless required by applicable law. Mortgagor shall pay to Mortgagee upon demand such additional money as is necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such Impositions when due. Upon the occurrence of an Event of Default, Mortgagee may apply any amount hereunder remaining to Mortgagor's credit to the reduction of the Obligations, at such times and in such manner as Mortgagee shall determine.

5.7 Repair. Mortgagor shall keep the Mortgaged Property in good order and condition and make all necessary or appropriate repairs and replacements thereof and betterments and improvements thereto, ordinary and extraordinary, foreseen and unforeseen, and use its best efforts to prevent any act that might impair the value or usefulness of the Mortgaged Property.

5.8 Restoration Following Casualty.

*Florida Mortgage* - Page 8

5.8.1    If all or any part of the Mortgaged Property shall be damaged or destroyed by a casualty covered by insurance under Section 5.5, Mortgagor shall immediately give written notice thereof to Mortgagee and the appropriate insurer, and Mortgagee is authorized and empowered (but not obligated or required) to make proof of loss and to settle, adjust or compromise any claims for loss, damage or destruction under any policies of insurance required under this Mortgage. All proceeds of insurance, as provided in Section 5.5, shall be paid to Mortgagee and shall be applied first to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee in obtaining such proceeds, and second, at the option of Mortgagee, either to the payment of the Obligations whether or not due, in such order as Mortgagee may elect, or to the restoration, repair, or replacement of the Mortgaged Property. If Mortgagee elects to apply the insurance proceeds to the restoration, repair or replacement of the Mortgaged Property, such proceeds shall be disbursed to Mortgagor as work progresses pursuant to a construction and disbursing agreement in form and content satisfactory to Mortgagee in its sole discretion, and Mortgagor shall promptly and diligently, regardless of whether there shall be sufficient insurance proceeds therefor, restore, repair and rebuild the Mortgaged Property to the equivalent of its condition immediately prior to the casualty. During the period of restoration and repair, Mortgagor shall continue to duly and promptly pay, perform, observe and comply with all of the Obligations. The election by Mortgagee to apply the insurance proceeds to the restoration, repair or replacement of the Mortgaged Property shall not affect the lien of this Mortgage or affect or reduce the Obligations.

5.8.2    If all or any of the Mortgaged Property shall be damaged or destroyed by a casualty not covered by insurance under Section 5.5, or, if so covered, the insurer fails or refuses to pay the claim within ninety (90) days following the filing thereof, Mortgagor shall immediately give written notice thereof to Mortgagee, and Mortgagor shall promptly and diligently, at Mortgagor's sole cost and expense, restore, repair and rebuild the Mortgaged Property to the equivalent of its condition immediately prior to the casualty. During the period of restoration and repair, Mortgagor shall continue to duly and promptly pay, perform, observe and comply with all of the Obligations.

5.8.3    If any work required to be performed under Subsections (a) or (b) above, or both, shall involve an estimated expenditure of more than $10,000.00, no such work shall be undertaken until plans and specifications therefor, prepared by an architect satisfactory to Mortgagee, have been submitted to and approved by Mortgagee.

5.9    Condemnation.

5.9.1    Mortgagor shall immediately notify Mortgagee upon obtaining any knowledge of the institution of any proceedings for the condemnation of the Mortgaged Property or any part thereof.

5.9.2    If all or any part of the Mortgaged Property shall be damaged or taken through condemnation (which term when used in this Mortgage shall include any damage or taking by any Governmental Authority and any transfer by private sale in lieu thereof, either temporarily or permanently), Mortgagee at its option may declare all of the unpaid Obligations to be immediately due and payable, and upon ten (10) days written notice from Mortgagee to Mortgagor all such Obligations shall immediately become due and payable as fully and to the same effect as if such date were the date originally specified for the final payment or maturity thereof. The Mortgagee shall be entitled to all compensation, awards and other payments resulting from such condemnation and is hereby authorized, at its option, to commence, appear in and prosecute, in its own or in Mortgagor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Mortgagor to Mortgagee and shall, be applied first to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee in connection with any action or proceeding under this Section, and second, at the option of Mortgagee, either to the payment of the Obligations whether or not due, in such order as Mortgagee may elect, or to the restoration, repair or alteration of the Mortgaged Property. If Mortgagee elects to apply the condemnation awards to the restoration, repair or alteration of the Mortgaged Property, such awards shall be disbursed to Mortgagor as work progresses pursuant to a construction and disbursing agreement in form and content satisfactory to Mortgagee in its sole discretion, and Mortgagor shall promptly and diligently, regardless of whether there shall be sufficient condemnation awards therefor, restore, repair and alter the Mortgaged Property in a manner satisfactory to Mortgagee. During the period of restoration and alteration, the Mortgagor shall continue to duly and promptly pay, perform, observe and comply with all of the Obligations. The election by Mortgagee to apply the condemnation awards to the restoration, repair or alteration of the Mortgaged Property shall not affect the lien of this Mortgage or affect or reduce the Obligations. If any restoration, repair or alteration of the Mortgaged Property shall involve an estimated expenditure of more than $10,000.00, same shall not be commenced until plans and specifications therefor, prepared by an architect satisfactory to Mortgagee, have been submitted to and approved by Mortgagee.

5.10    Inspection. Mortgagor shall permit Mortgagee and its agents to inspect the Mortgaged Property at any time during normal business hours and at all other reasonable times.

5.11    Contest of Tax Assessments, Etc. After prior written notice to Mortgagee, Mortgagor, at its own expense, may contest by appropriate legal proceedings, promptly initiated and conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of (a) any of the Governmental Requirements referred to in Section 5.3, or (b) any Imposition; provided that: (i) in the case of any unpaid Imposition, such proceedings shall suspend the collection thereof from Mortgagor and from the Mortgaged Property, (ii) the Mortgaged Property or any part thereof will not be in danger of being sold, forfeited, terminated, cancelled or lost, (iii) the use of the Mortgaged Property or any part thereof for its present or future intended purpose or purposes will not be interrupted, lost or terminated, (iv) Mortgagor shall have set aside adequate reserves with respect thereto, and (v) Mortgagor shall have furnished such security as may be required in the proceedings or as may be reasonably requested by Mortgagee.

5.12    Expenses.

5.12.1    Mortgagor shall pay all costs and expenses in connection with the Loan and the preparation, execution, and delivery of the Loan Documents including, but not limited to, fees and disbursements of counsel appointed by Mortgagee, and all recording costs and expenses, documentary stamp tax and intangible tax on the entire amount of funds disbursed under the Loan, and other taxes, surveys, appraisals, premiums for

*Florida Mortgage* - Page 9



policies of title and other insurance and all other fees, costs and expenses, if any, set forth in the Loan Documents or otherwise connected with the Loan transaction.

      5.12.2    Mortgagor shall pay or reimburse Mortgagee for all costs, charges, expenses, and reasonable attorneys' fees paid or incurred by Mortgagee pursuant to this Mortgage including but not limited to those costs, charges, expenses and fees paid or incurred for the payment of the Impositions, insurance, completion of construction, repairs, or in any action, proceeding or dispute of any kind in which Mortgagee is a party because of any Obligation not being duly and promptly performed or being violated, including, but not limited to, the foreclosure or other enforcement of this Mortgage, any condemnation or eminent domain action involving the Mortgaged Property or any part thereof, any action to protect the security hereof, or any proceeding in probate, reorganization, bankruptcy, or forfeiture in rem.  All such amounts paid or incurred by Mortgagee, together with interest thereon at the Default Rate from the date incurred by Mortgagee, shall be secured by this Mortgage and shall be due and payable by Mortgagor immediately, whether or not there be notice or demand therefor.

      5.12.3    Any reference in this Mortgage to attorneys' or counsels' fees paid or incurred by Mortgagee shall be deemed to include paralegals' fees and legal assistants' fees.  Moreover, wherever provision is made herein for payment of attorneys' or counsels' fees or expenses incurred by the Mortgagee, said provision shall include, but not be limited to, such fees or expenses incurred in any and all judicial, bankruptcy, reorganization, administrative, or other proceedings, including appellate proceedings, whether such fees or expenses arise before proceedings are commenced or after entry of a final judgment.

    5.13    <u>Preservation of Agreements</u>.  Mortgagor shall preserve and keep in full force and effect all agreements, approvals, permits and licenses necessary for the development, use and operation of the Mortgaged Property for its intended purpose or purposes.

    5.14    <u>Books and Records</u>.  The Mortgagor shall keep and maintain, at all times, full, true and accurate books of accounts and records, adequate to correctly reflect the results of the operation of the Mortgaged Property.  The Mortgagee shall have the right to examine such books and records and to make such copies or extracts therefrom as the Mortgagee shall require.

    5.15    <u>Estoppel Affidavits</u>.  Mortgagor, within ten (10) days after written request from Mortgagee, shall furnish a written statement, duly acknowledged, setting forth the unpaid principal balance of, and interest on, the Obligations secured by this Mortgage, and whether or not any off-sets or defenses exist thereto.

    5.16    <u>Indemnification</u>.

      5.16.1    Mortgagor shall at its own expense, and does hereby agree to, protect, indemnify, reimburse, defend and hold harmless Mortgagee and its directors, officers, agents, employees attorneys, successors and assigns from and against any and all liabilities (including strict liability), losses, suits, proceedings, settlements, judgments, orders, penalties, fines, liens, assessments, claims, demands, damages, injuries, obligations, costs, disbursements, expenses or fees, of any kind or nature (including attorneys' fees and expenses paid or incurred in connection therewith) arising out of or by reason of (a) an incorrect legal description of the Land; (i) any action, or inaction of Mortgagee in connection with the Note, this Mortgage, the other Loan Documents or the Mortgaged Property; (ii) the construction of any Improvements; (iii) the use and operation of the Mortgaged Property; (iv) any acts or omissions of Mortgagor or any other Person at, on or about the Mortgaged Property regarding the contamination of air, soil, surface waters or groundwaters over, on or under the Mortgaged Property; (v) the presence, whether past, present or future, of any Hazardous Substances on, in or under the Mortgaged Property; or (vi) any past, present or future events, conditions, circumstances, activities, practices, incidents, actions or plans involving the manufacture, processing, distribution, use, transport, handling, treatment, storage, disposal, cleanup, emission, discharge, seepage, spillage, leakage, release or threatened release of any Hazardous Substance on, in, under or from the Mortgaged Property, in connection with Mortgagor's operations on the Mortgaged Property, or otherwise; all of the foregoing regardless of whether within the control of Mortgagee.

      5.16.2    The indemnifications of this Section shall survive the full payment and performance of the Obligations and the satisfaction of this Mortgage.

    5.17    <u>Mortgagor to Furnish Financial Statements</u>.  Mortgagor shall, until all the Obligations have been fully paid and performed, furnish Mortgagee with annual financial statements of Mortgagor, prepared in such detail as Mortgagee may reasonably require and certified by the appropriate officer of Mortgagor as being accurate.  Mortgagor shall also furnish Mortgagee with annual financial statements and liquidity verifications of Guarantors, prepared in such detail as Mortgagee may reasonably require.  Such financial statements of Mortgagor and Guarantors shall be dated no later than each anniversary of the date of the prior statement and received by Mortgagee no later than thirty (30) days after each anniversary date of the date of the prior statement.  Mortgagor shall also furnish Mortgagee with copies of all income tax returns, including all K-1 schedules, or copies of extensions, of Mortgagor and Guarantors within thirty (30) days of the delivery of same to any Governmental Authority, but in no case later than September 15 each year for Mortgagor and in no case later than October 15 each year for each Guarantor. Mortgagor shall also furnish Mortgagee with annual statements reflecting all real property in which Guarantors have any interest, whether direct or indirect.  Failure to furnish such statements shall be an Event of Default under Article VII of this Mortgage.

    5.18    <u>Mortgagor to Furnish Financial Statements of the Mortgaged Property</u>.  Mortgagor shall, until all the Obligations have been fully paid and performed, furnish Mortgagee with an annual rent roll and statements of earnings for the Mortgaged Property for each fiscal year of Mortgagor in such detail as Mortgagee may reasonably require, showing gross income and detailed operating expenses of and a balance sheet for the operation of the Mortgaged Property.  Mortgagor shall promptly notify Mortgagee of any changes in the names of tenants, the amounts of space occupied, or the termination of any Leases before the Lease expiration date as soon as Mortgagor becomes aware of any such changes.  All such financial statements shall be certified by the appropriate manager, managing member or officer of Mortgagor as being true and correct.  Each such statement shall, where applicable, be for and cover a whole fiscal year.  Such statements shall, where applicable, be furnished not later than sixty (60) days after the end of Mortgagor's fiscal year.  Failure to furnish such statements shall be an Event of Default under Article VII of this Mortgage.

*Florida Mortgage* - Page 10



5.19     Further Assurances. Mortgagor, at its sole expense, upon the request of Mortgagee, shall execute, acknowledge and deliver such further instruments and do such further acts as may, in the opinion of the Mortgagee, be necessary, desirable, or proper to carry out more effectively the purpose of this Mortgage and to subject to the lien hereof any property intended by the terms hereof to be covered hereby, including, without limitation, any proceeds, renewals, additions, substitutions, replacements, products, betterments, accessions and appurtenances thereto and thereof.

5.20     Junior Mortgage(s) and Rights of Mortgagee.

5.20.1    Mortgagor shall, with respect to any Junior Mortgage, (i) promptly observe and perform all of the covenants and conditions contained in the Junior Mortgage, (ii) duly and promptly make all payments required by the terms of the Junior Mortgage, (iii) promptly notify Mortgagee in writing upon receipt by Mortgagor of any notice that Mortgagor is in default under the Junior Mortgage or that an event has occurred which with due notice or the lapse of time, or both, would constitute a default under the Junior Mortgage, and to promptly cause a copy of each such notice given by the holder thereof to be delivered to Mortgagee, and (iv) from time to time upon demand of Mortgagee submit evidence to Mortgagee that Mortgagor has maintained and is maintaining the Junior Mortgage in good standing.  Upon receipt by Mortgagee of any such aforesaid notice, Mortgagee may rely thereon even though the existence of such default or the nature thereof may be questioned or denied by Mortgagor or by any party on behalf of Mortgagor.

5.20.2    If Mortgagor fails to make any payment required under the Junior Mortgage as and when due, or fails to perform any condition, covenant, or term of the Junior Mortgage, then Mortgagee may on behalf of Mortgagor, but without obligation to do so, and without notice to and demand upon Mortgagor, and without releasing Mortgagor from any Obligation and without waiving any Event of Default hereunder, take any action Mortgagee deems necessary or desirable to prevent or cure any such default by Mortgagor, including, but without limitation, the right to pay any and all payments of principal and interest, insurance premiums, taxes and assessments and other sums due or to become due under the Junior Mortgage.  Mortgagor hereby expressly grants to Mortgagee and agrees that Mortgagee and its agents shall have the absolute and immediate right to enter upon the Land and the Improvements or any part thereof to such extent and as often as Mortgagee in its sole discretion deems necessary or desirable in order to prevent or cure any such default by Mortgagor.  All payments and all costs and expenses incurred by Mortgagee in connection with any such prevention or cure (including, without limitation, reasonable attorneys' fees and expenses), together with interest thereon at the Default Rate from the date incurred by Mortgagee, shall be secured by this Mortgage and shall be due and payable by Mortgagor immediately, whether or not there be notice, demand, an attempt to collect same, or suit pending.

5.20.3    Nothing in this Section shall in any manner be construed as consent by Mortgagee to the further encumbering or mortgaging of the Mortgaged Property.

5.21     Financing Statements.  Mortgagor shall execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements, continuation statements, and such further assurances as Mortgagee may from time to time consider reasonably necessary to create, perfect, preserve and maintain in full force and effect Mortgagee's lien upon the Fixtures, Leases, Rents and Personal Property; and, Mortgagee, at the expense of Mortgagor, may cause such statements and assurances to be recorded and rerecorded, filed and re-filed, in the name of Mortgagor, and Mortgagor hereby constitutes and irrevocably appoints Mortgagee its true and lawful attorney-in-fact, which appointment is coupled with an interest, with full power of substitution, and empowers said attorney or attorneys in the name of Mortgagor, but at the option of said attorney-in-fact, to execute and file any and all financing statements.

5.22     Withholding Taxes.

5.22.1    If under any applicable law or regulation or the interpretation thereof by any Governmental Authority charged with the administration thereof, Mortgagor shall be required to make any withholding or deduction from any payment of the Obligations (whether of principal, interest or otherwise) to be made by or on behalf of Mortgagor to Mortgagee for or in respect of any present or future taxes, levies, imposts, duties, charges, or fees of any nature (excepting only Mortgagee's income taxes of the United States of America, State of Florida and their political subdivisions), the amount due to Mortgagee from Mortgagor in respect of such payment shall be increased to the extent necessary to ensure that after making such withholding or deduction and any withholdings or deductions required to be made in respect to any such increase, Mortgagee shall receive an amount equal to the amount which Mortgagee would have received had no such withholding or deduction been required to be made. In the event of any such withholding or deduction, Mortgagor shall deliver to Mortgagee forthwith after receipt thereof the official receipt or other official documentation evidencing the payment of the amount so withheld or deducted.

5.22.2    If Mortgagor shall fail to make any withholding or deduction so required to be made, Mortgagee reserves the right to make payment thereof to the appropriate Governmental Authority.  If Mortgagee makes such payment under any applicable law or regulation or if as a result of the interpretation thereof by any Governmental Authority charged with the administration thereof in respect of any such payment, whether of principal, interest or otherwise made or to be made by Mortgagor, Mortgagee shall be required to pay any tax, levy, impost, duty, charge or fee of any nature (excepting only Mortgagee's income taxes of the United States of America, State of Florida and their political subdivisions), Mortgagor shall and does hereby indemnify Mortgagee against and shall forthwith upon demand of Mortgagee pay to Mortgagee the amount of such payment, together with any interest, penalties, and expenses in connection therewith, and interest thereon at the Default Rate; and in the event any of the aforesaid amounts, interest, penalties or expenses shall be subject to withholding or deduction, the amount thereof shall be increased to the extent necessary to ensure that after making such withholding or deduction and any withholdings or deductions in respect of any such increase, Mortgagee shall receive an amount equal to the amount which Mortgagee would have received had no such withholding or deduction been required to be made.

5.22.3    Any increased amount required to be paid by Mortgagor in accordance with the provisions of this Section shall have the same character as the amount in respect of which such increased amount is determined, but shall not (i) if characterized as principal, be applied in reduction of the principal amount outstanding under the Obligations or (ii) if characterized as interest, be applied in reduction of accrued, unpaid interest under the Obligations.

5.23     Hazardous Substances.

*Florida Mortgage* - Page 11



5.23.1   Mortgagor shall immediately notify Mortgagee orally and in writing if Mortgagor (a) becomes aware of the presence of any Hazardous Substance or other environmental problem or liability on, in, under, released from or associated with the Mortgaged Property, or (b) receives any complaint, order, citation, notice or other written or oral communication (collectively an "Environmental Complaint") regarding air emissions, water discharges or any other environmental, health or safety matter affecting the Mortgaged Property or any part thereof, or the presence of any Hazardous Substance on, in, under, released from or associated with the Mortgaged Property, or any past, present or future events, conditions, circumstances, activities, practices, incidents, actions or plans involving the manufacture, processing, distribution, use, transport, handling, treatment, storage, disposal, cleanup, emission, discharge, seepage, spillage, leakage, release or threatened release of any Hazardous Substance on, under or from the Mortgaged Property. Mortgagor shall forthwith transmit to Mortgagee copies of any Environmental Complaint.

5.23.2   Mortgagor shall, at its own cost and expense, take any action reasonably necessary or advisable for the cleanup of any Hazardous Substance on, in, under, released from or associated with the Mortgaged Property, including any removal, containment or remedial actions in accordance with all applicable Environmental Laws, and shall pay or cause to be paid all cleanup, administrative, enforcement and other costs, expenses or fines which may be asserted against Mortgagor, Mortgagee, the Mortgaged Property, or any other Person in connection therewith.

5.23.3   Mortgagee shall have the right but not the obligation, and without any limitation of Mortgagee's other rights under this Mortgage, to enter onto the Mortgaged Property or to take any action as it deems reasonably necessary or advisable to cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Substance or any Environmental Complaint following receipt of any notice from any Person or Governmental Authority asserting the existence of any Hazardous Substance or an Environmental Complaint pertaining to the Mortgaged Property or any part thereof which, if true, could result in an order, suit or other action against Mortgagor or Mortgagee which, in the sole but commercially reasonable opinion of Mortgagee, could jeopardize Mortgagee's security under this Mortgage. All costs and reasonable expenses incurred by Mortgagee in the exercise of any such rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand.

5.23.4   In the event that Mortgagee has any reason to believe there is any violation of Environmental Law, Mortgagor shall, within thirty (30) days of Mortgagee's written request, cause to be prepared an environmental audit of the Mortgaged Property (but not more frequently than annually unless an Environmental Complaint is then outstanding) and, if required by Mortgagee, an environmental risk assessment of the Mortgaged Property including Hazardous Substances waste management practices and Hazardous Substances waste disposal sites thereon. All environmental audits and environmental risk assessments shall be at Mortgagor's expense, shall be performed and prepared by an environmental consultant satisfactory to Mortgagee, and shall otherwise be in form and substance satisfactory to Mortgagee. Should Mortgagor fail to provide such environmental audit or environmental risk assessment within said thirty (30) day period, Mortgagee shall have the right, but not the obligation, to retain an environmental consultant to perform and prepare same. All costs and expenses incurred by Mortgagee in the exercise of such rights shall be secured by this Mortgage and shall be payable by Mortgagor upon demand or charged to Mortgagor's loan balance at the discretion of Mortgagee.

5.24   Financial Reports, Etc. Mortgagor shall, at Mortgagor's sole cost and expense, provide Mortgagee with any financial statements, financial reports, appraisals or other documentation with respect to Mortgagor or the Mortgaged Property which may be required from time to time by any Governmental Authority having regulatory authority over Mortgagee. Such information shall be provided by Mortgagor within thirty (30) days after written request from Mortgagee.

5.25   Performance of Loan Documents. Mortgagor shall duly and punctually perform all covenants, terms and agreements expressed as binding upon it under all of the Loan Documents.

5.26   Performance of Other Agreements. Mortgagor shall duly and punctually perform all covenants, terms and agreements expressed as binding upon it under any Permitted Title Exception, or any other agreement of any nature whatsoever binding upon it with respect to the Mortgaged Property.

5.27   Intentionally Omitted.

5.28   USA Patriot Act.

5.28.1   Mortgagor hereby represents and warrants to, and covenants with, Mortgagee that as of the date hereof and until such time as the Obligations shall be paid in full:

(i)   None of the entities comprising Mortgagor or Guarantor or any of their respective direct or indirect constituents or affiliates, any of their respective officers or directors (including officers or directors of any such constituents or affiliates), and, to Mortgagor's knowledge, any of their respective brokers, investors or other agents acting or benefiting in any capacity in connection with the Loan, is a Prohibited Person (as defined below);

(ii)   None of the entities comprising Mortgagor, Guarantor or any of their respective direct or indirect constituents or affiliates, any of their respective officers or directors (including officers or directors of any such constituents or affiliates) (A) to Mortgagor's knowledge, has conducted or will conduct any business or has engaged or will engage in any transaction or dealing with any Prohibited Person, including making or receiving any contribution of funds, goods or services to or for the benefit of any Prohibited Person, (B) to Mortgagor's knowledge, has dealt or will deal in, or otherwise has engaged or will engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order (as defined below); or (C) has engaged or will engage in or has conspired or will conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the requirements or prohibitions set forth in the Executive Order or the PATRIOT Act (as defined below);

(iii)   To Mortgagor's knowledge, none of the brokers, investors or other agents for any entity comprising Mortgagor, Guarantor or any indemnitor or principal under the Loan Documents acting in any capacity in connection with the Loan (A) has conducted or will conduct any business or has engaged or will engage in any transaction or dealing with any Prohibited Person, including making or receiving any contribution of funds, goods or services to or for the benefit of any Prohibited Person, (B) has dealt or will deal in, or otherwise has

*Florida Mortgage - Page 12*

engaged or will engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order; or (C) has engaged or will engage in or has conspired or will conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the requirements or prohibitions set forth in the Executive Order or the PATRIOT Act;

(iv)    Mortgagor covenants and agrees to deliver to Mortgagee any certification or other evidence requested from time to time by Mortgagee, confirming Mortgagor's compliance with this Section;

(v)    Mortgagor represents and warrants that to its knowledge Mortgagor, Guarantor, and and all of their respective affiliates (including any officers and directors of any of the foregoing) are in full compliance with all applicable orders, rules and regulations issued by, and recommendations of, the U.S. Department of the Treasury and OFAC (as defined below) pursuant to IEEPA (as defined below), the PATRIOT Act, other legal requirements relating to money laundering or terrorism and any executive orders related thereto;

(vi)    At all times throughout the term of the Loan, Mortgagor, Guarantor, and all of their respective affiliates (including any officers and directors of any of the foregoing) shall be in full compliance with all applicable orders, rules and regulations issued by, and recommendations of, the U.S. Department of the Treasury and OFAC pursuant to IEEPA, the PATRIOT Act, other legal requirements relating to money laundering or terrorism and any executive orders related thereto;

(vii)    Mortgagor covenants that it will adopt appropriate policies, procedures and internal controls to be fully compliant with any additional laws, rules or regulations relating to money laundering and/or terrorism, including the PATRIOT Act, to which it may become subject;

(viii)    Mortgagor does not believe, and has no reason to believe, that any of its investors is a "Prohibited Foreign Shell Bank" (as defined in the PATRIOT Act), or is named on any available lists of known or suspected terrorists, terrorist organizations or of other sanctioned persons issued by the United States government and/or the government(s) of any jurisdiction(s) in which Mortgagor is doing business;

(ix)    Mortgagor does not believe, and has no reason to believe, that the person or entity from whom Mortgagor acquired the Mortgaged Property is a Prohibited Foreign Shell Bank, or is named on any available lists of known or suspected terrorists, terrorist organizations or of other sanctioned persons issued by the United States government and/or the government(s) of any jurisdiction(s) in which Mortgagor is doing business;

(x)    Mortgagor will advise Mortgagee immediately of any material change that would affect the representations, covenants and warranties provided in this Section.

5.28.2    For purposes hereof, "IEEPA" means the International Emergency Economic Power Act, 50 U.S.C. §1701 et. seq. "OFAC" means the U.S. Department of Treasury's Office of Foreign Asset Control. "PATRIOT Act" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56) (The USA PATRIOT Act). "Prohibited Person" means any Person: (a) listed in the Annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (the "Executive Order"); (b) that is owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the Annex to, or is otherwise subject to the provisions of the Executive Order; (c) with whom Mortgagee is prohibited from dealing or otherwise engaging in any transaction by any terrorism or money laundering legal requirements, including the PATRIOT Act and the Executive Order; (d) that commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order; (e) that is named as a "specifically designated national (SDN)" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website, http://www.treas.gov.ofac/t11sdn.pdf or at any replacement website or other replacement official publication of such list or is named on any other U.S. or foreign government or regulatory list issued post-09/11/01; (f) that is covered by IEEPA, OFAC or any other law, regulation or executive order relating to the imposition of economic sanctions against any country, region or individual pursuant to United States law or United Nations resolution; or (g) that is an affiliate (including any principal, officer, immediate family member or close associate) of a person or entity described in one or more of clauses (a) – (f) of this definition of Prohibited Person.

5.29    Ownership of Mortgagor.  Mortgagor shall require and cause any Person who acquires twenty percent (20%) or more of the shareholder interests, as applicable, in Mortgagor, to execute and deliver to Mortgagee a guaranty in form and substance acceptable to Mortgagee; provided, however, that this requirement shall not be construed as a waiver of the prohibitions set forth in Section 6.5 hereof.

5.30    Performance of Lease Obligations.  Mortgagor shall duly and punctually perform all covenants, terms and agreements expressed as binding upon it under the Leases.

## ARTICLE VI
## NEGATIVE COVENANTS

6.1    Use Violations, Etc.  Mortgagor shall not use the Mortgaged Property or allow the same to be used or occupied for any unlawful purpose or in violation of any Governmental Requirement or restrictive covenant covering, affecting or applying to the ownership, use or occupancy thereof, commit or permit or suffer any act to be done or any condition to exist on the Mortgaged Property or any article to be brought thereon that may be dangerous, or that may in any way increase any ordinary fire or other hazard, unless safeguarded as required by law, or that may, in law, constitute a nuisance, public or private.

6.2    Care of the Mortgaged Property.

6.2.1    Mortgagor shall not commit or permit any waste, impairment, or deterioration of the Mortgaged Property, or perform any clearing, grading, filling or excavation of the Mortgaged Property, or make or permit to be made to the Mortgaged Property any alterations or

*Florida Mortgage* - Page 13

additions that would have the effect of materially diminishing the value thereof (in Mortgagee's sole opinion) or take or permit any action that will in any way increase any ordinary fire or other hazard arising out of the construction or operation thereof.

6.2.2   Mortgagor shall not, without the prior written consent of Mortgagee, remove, demolish or substantially alter, or permit the removal, demolishment or substantial alteration of, any Improvements on the Land. In the event such consent is given and if any work to be performed shall involve an estimated expenditure of more than $10,000.00, no such work shall be undertaken until plans and specifications therefor, prepared by an architect satisfactory to Mortgagee, shall have been submitted to and approved by Mortgagee.

6.2.3   Mortgagor shall not permit any of the Fixtures or Personal Property to be demolished or to be removed from the Land, without the prior written consent of Mortgagee. In the event such consent is given, the Mortgagee may require that said Fixture or Personal Property be replaced by an article of equal suitability and value, owned by Mortgagor free and clear of any vendor's lien, chattel mortgage, or security interest of any kind, except such as may be approved in writing by Mortgagee, and that such replacement article be encumbered by the lien of this Mortgage. Notwithstanding the foregoing, the Mortgagor may remove or demolish any Fixture or Personal Property without first obtaining the Mortgagee's prior written consent provided (a) the value of such article does not exceed in value at the time of disposition thereof $10,000.00 for any single item, or a total of $25,000.00 in any one year for all such items and (vi) that said article is replaced and subject to the lien of this Mortgage as aforesaid.

6.3   Other Liens and Mortgages.

6.3.1   Mortgagor shall not, without the prior written consent of Mortgagee, create or permit to be created or to remain, any mortgage, pledge, construction lien or other lien, conditional sale or other title retention agreement, encumbrance, claim, or charge on (whether prior or subordinate to the lien of this Mortgage or the other Loan Documents) the Mortgaged Property or income therefrom, other than this Mortgage, the other Loan Documents and the Permitted Title Exceptions. Any transaction prohibited under this Section shall be null and void.

6.3.2   Mortgagor shall not, without the prior written consent of Mortgagee, (a) enter into any agreement either oral or in writing, whereby any permitted Junior Mortgage is modified or amended in any manner whatsoever, (b) permit the release of any guarantor or modification of any guaranty affecting any permitted Junior Mortgage, or (c) incur any additional indebtedness secured thereby.

6.3.3   Mortgagor shall not directly or indirectly, take, acquire, or permit to be taken or acquired by any other party, any interest whatsoever in any permitted Junior Mortgage without the prior written consent of Mortgagee.

6.4   Transfer of Mortgaged Property. Mortgagor shall not sell, convey, or transfer or permit to be sold, conveyed or transferred any interest in the Mortgaged Property or any part thereof. A contract to deed or agreement for deed, or an assignment, pledge, or encumbrance of a beneficial interest in any land trust, or a lease for all or substantially all of the Land or Improvements shall constitute a transfer prohibited by the provisions of this Section and shall be null and void.

6.5   Change in Ownership of Mortgagor. Mortgagor shall not, without the prior written consent of Mortgagee, (i) transfer, convey, encumber, hypothecate, assign, mortgage or pledge any shareholder, membership, partnership or other ownership interests in the Mortgagor, or (ii) issue any additional shares, membership, partnership or other ownership interests in the Mortgagor, or (iii) permit any event which would result in a change in the control of the Mortgagor.

6.6   Loans to Shareholders. From and after the occurrence of an Event of Default, Mortgagor shall not make loans directly or indirectly to any Guarantor, member, affiliate, or any related party of Mortgagor.

6.7   Mortgagor's By-laws. Mortgagor shall not, without the prior written consent of Mortgagee, materially amend or modify its By-Laws.

6.8   Intentionally Deleted.

6.9   Environmental Contamination/Hazardous Substances. Mortgagor and the Mortgaged Property shall at all times remain in full compliance with all Environmental Laws. Mortgagor shall not, nor permit any other person to manufacture, process, distribute, use, transport, handle, treat, store, dispose, emit, discharge, leak, spill or release any Hazardous Substance on, in, under or from the Mortgaged Property.

## ARTICLE VII
## EVENTS OF DEFAULT

7.1   Events of Default. An "Event of Default", as used in this Mortgage, shall occur at any time or from time to time:

7.1.1   Failure to Pay. If any Obligation or any installment thereof is not paid as and when due and payable;

7.1.2   Failure to Perform. If any Obligation other than an Obligation requiring the payment of money or the occurrence of an event described in Subsections 7.1.1 or 7.1.3 through 7.1.15, inclusive, below is not duly and promptly performed or is violated and such non-performance or violation is not curable, or if curable continues for a period of fifteen (15) days after written notice thereof from Mortgagee to Mortgagor; provided, however, if such non-performance or violation may not reasonably be cured within such fifteen (15) day period, an Event of Default shall not be deemed to have occurred so long as same shall be diligently and continuously endeavored to be cured. Notwithstanding the foregoing, it shall be an Event of Default if such non-performance or violation has not been cured within sixty (60) days after notice thereof;

7.1.3   False Representation. If any representation or warranty made in any Loan Document by or on behalf of Mortgagor or any Guarantor is at any time false, misleading, or breached;

7.1.4   Judgment. If a final judgment for the payment of money is rendered against Mortgagor or any Guarantor, and the same remains unsatisfied except for such period of time as execution on the judgment is effectively stayed or bonded;

*Florida Mortgage -* Page 14

      7.1.5    <u>Voluntary Bankruptcy, Etc.</u>  If Mortgagor or any Guarantor (a) is voluntarily adjudicated a bankrupt or insolvent, (b) seeks or consents to the appointment of a receiver or trustee for itself or for all or any part of its property, (c) files a petition seeking relief, including reorganization, arrangement or similar relief, under the present Bankruptcy Code or other similar present or future applicable laws of the United States or any state or any other competent jurisdiction, (d) makes a general assignment for the benefit of creditors or (e) admits in writing its inability to pay its debts as they mature;

      7.1.6    <u>Involuntary Bankruptcy, Etc.</u>  If a receiver or trustee is appointed for Mortgagor or any Guarantor or for all or any part of their respective properties without their respective consents and such appointment is not vacated within sixty (60) days of receipt of notice thereof, or if a petition is filed against Mortgagor or any Guarantor seeking relief, including reorganization, arrangement or similar relief, under the present Bankruptcy Code or other similar present or future applicable laws of the United States or any state or other competent jurisdiction, and such petition is not dismissed within sixty (60) days after receipt of notice of the filing thereof;

      7.1.7    <u>Dissolution.</u>  If Mortgagor or any Guarantor voluntarily or involuntarily dissolves or liquidates;

      7.1.8    <u>Financial Condition.</u>  If a material adverse change has occurred, at any time or times subsequent to the date hereof, in the financial condition, results of operations, operations, business, properties, or prospects of Mortgagor, its subsidiaries, parent or affiliates, or any Guarantor, or any endorser, co-maker, surety or guarantor of the Obligations, such as, by way of illustration and not limitation, a downturn in financial performance, the loss of key customers, the loss of critical licenses, management exodus, or a labor strike;

      7.1.9    <u>Death or Incompetency.</u>  If any Guarantor dies or is declared incompetent;

      7.1.10    <u>Default Under Note.</u>  If any default occurs under the Note (subject to the same grace, cure and notice periods provided in Section 7.1.2 above);

      7.1.11    <u>Default Under Loan Documents.</u>  If any default occurs under any of the other Loan Documents or if any obligation of Mortgagor, as applicable,  under any of the other Loan Documents is not fully performed (subject to the same grace, cure and notice periods provided in Section 7.1.2 above);

      7.1.12    <u>Foreclosure of Other Liens.</u>  If the holder of any mortgage or other lien on the Mortgaged Property, whether a Permitted Title Exception or not (without hereby implying Mortgagee's consent to any such mortgage or other lien) institutes foreclosure or other proceedings for the enforcement of any of its remedies thereunder and such proceeding is not dismissed within sixty (60) days after receipt of notice of filing thereof;

      7.1.13    <u>Notice Limiting Future Advances.</u>  If Mortgagor, pursuant to Florida Statutes 697.04(1)(b) as amended from time to time, files for record a notice limiting the maximum amount which may be secured by this Mortgage;

      7.1.14    <u>Default Under Junior Mortgage.</u>  If any default or any event of default occurs under any permitted Junior Mortgage, whether or not foreclosure or other proceedings have been instituted thereunder; or

      7.1.15    <u>Suspicious Activity.</u>  If any unusual, irregular or potentially suspicious activity is detected with respect to Mortgagor, any Guarantor, or their loan, deposit or other accounts or relationships with Mortgagee or the name or any derivation thereof of Mortgagor and is not explained to the reasonable satisfaction of Mortgagee within fifteen (15) days after Mortgagor's receipt of notice thereof from Mortgagee, or any Guarantor appears on a list of suspects issued to financial institutions by the Office of Foreign Assets Control, the Financial Crimes Enforcement Network, the Federal Reserve Board or any other Governmental Authority.

      7.1.16    <u>Termination of Guaranty.</u>  If any Guarantor delivers to Mortgagee any notice purporting to limit or terminate any Guaranty.

**ARTICLE VIII**
**RIGHTS AND REMEDIES**

    8.1    <u>Remedies.</u>  If an Event of Default shall have occurred, Mortgagee may, at its option, exercise any, some or all of the following remedies, concurrently or consecutively:

      8.1.1    <u>Acceleration.</u>  Mortgagee may declare all of the unpaid Obligations, together with all accrued interest thereon, to be due and payable without notice or demand which are hereby expressly waived, and upon such declaration all such Obligations shall immediately become due and payable as fully and to the same effect as if the date of such declaration were the date originally specified for the full payment or maturity thereof.

      8.1.2    <u>Mortgagee's Right to Enter and Take Possession, Operate and Apply Income.</u>

          (a)    Mortgagee may demand that Mortgagor surrender the actual possession of the Mortgaged Property and upon such demand, Mortgagor shall forthwith surrender same to Mortgagee and, to the extent permitted by law, Mortgagee itself, or by such officers or agents as it may appoint, may enter and take possession of all of the Mortgaged Property and may exclude Mortgagor and its agents and employees wholly therefrom.

          (b)    If Mortgagor shall for any reason fail to surrender or deliver the Mortgaged Property or any part thereof after Mortgagee's demand, Mortgagee may obtain a judgment or order conferring on Mortgagee the right to immediate possession or requiring the Mortgagor to deliver immediate possession to Mortgagee, to the entry of which judgment or decree the Mortgagor hereby specifically consents.

*Florida Mortgage - Page 15*



(c)     Mortgagee may from time to time: (vii) continue and complete construction of, hold, store, use, operate, manage and control the Mortgaged Property and conduct the business thereof; (viii) make all reasonably necessary maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional Fixtures and Personal Property; (ix) insure or keep the Mortgaged Property insured; (x) exercise all the rights and powers of the Mortgagor in its name or otherwise with respect to the same; and (xi) enter into agreements with others (including, without limitation, new Leases or amendments, extensions, or cancellations to existing Leases) all as Mortgagee from time to time may determine in its sole discretion.  Mortgagor hereby constitutes and irrevocably appoints Mortgagee its true and lawful attorney-in-fact, which appointment is coupled with an interest, with full power of substitution, and empowers said attorney or attorneys in the name of Mortgagor, but at the option of said attorney-in-fact, to do any and all acts and execute any and all agreements that Mortgagee may deem necessary or proper to implement and perform any and all of the foregoing.

(d)     The Mortgagee may, with or without taking possession of the Mortgaged Property as hereinabove provided, collect and receive all the Rents therefrom, including those past due as well as those accruing thereafter, and shall apply the monies so received first, to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee and its agents in connection with the collection of same, whether or not in possession of the Mortgaged Property, and second, in such order as Mortgagee may elect, to the payment of the Obligations.

8.1.3     Proceedings To Recover Sums Due.

(a)     If any installment or part of any Obligation shall fail to be paid when due, Mortgagee shall be entitled to sue for and to recover judgment against the Mortgagor for the amount so due and unpaid together with all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee in connection with such proceeding, together with interest thereon at the Default Rate from the date incurred by Mortgagee.  All such costs and expenses shall be secured by this Mortgage and shall be due and payable by Mortgagor immediately.

(b)     If Mortgagor shall fail to pay upon the Mortgagee's demand, after acceleration as provided in Subsection 8.1.1, all of the unpaid Obligations, together with all accrued interest thereon, Mortgagee shall be entitled to sue for and to recover judgment against the Mortgagor for the entire amount so due and unpaid together with all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee in connection with such proceeding, together with interest thereon at the Default Rate from the date incurred by Mortgagee.  All such costs and expenses shall be secured by this Mortgage and shall be payable by Mortgagor immediately.  Mortgagee's right under this Subsection may be exercised by Mortgagee either before, after or during the pendency of any proceedings for the enforcement of this Mortgage, including appellate proceedings.

(c)     No recovery of any judgment as provided in Subsections (a) and (b) above and no attachment or levy of any execution upon any of the Mortgaged Property or any other property shall in any way affect the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any lien, rights, powers, or remedies of Mortgagee hereunder, but such lien, rights, powers and remedies shall continue unimpaired as before.

(d)     In accordance with Section 55.03(1), Florida Statutes (2017), Mortgagor hereby expressly further agrees that the Default Rate shall be applicable to interest accruing on any judgment entered with respect to the indebtedness evidenced or secured hereby or by any of the other Loan Documents.

8.1.4     Foreclosure.

(a)     Mortgagee may institute proceedings for the partial or complete foreclosure of this Mortgage and Mortgagee may, pursuant to any final judgment of foreclosure, sell the Mortgaged Property as an entirety or in separate lots, units, or parcels.

(b)     In case of a foreclosure sale of all or any part of the Mortgaged Property, the proceeds of sale shall be applied in accordance with Section 8.8 hereof, and the Mortgagee shall be entitled to seek a deficiency judgment against the Mortgagor to enforce payment of any and all Obligations then remaining due and unpaid, together with interest thereon, and to recover a judgment against the Mortgagor therefor. In accordance with Section 55.03(1), Florida Statutes (2017), Mortgagor hereby expressly further agrees that the Default Rate shall be applicable to interest accruing on any judgment entered with respect to the indebtedness evidenced or secured hereby or by any of the other Loan Documents.

(c)     The Mortgagee is authorized to foreclose this Mortgage subject to the rights of any tenants of the Mortgaged Property, or Mortgagee may elect which tenants Mortgagee desires to name as parties defendant in such foreclosure and failure to make any such tenants parties defendant to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted by the Mortgagor to be, a defense to any proceedings instituted by the Mortgagee to collect the unpaid Obligations or to collect any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Property.

8.1.5     Receiver.  Mortgagee may apply to any court of competent jurisdiction to have a receiver appointed to enter upon and take possession of the Mortgaged Property, collect the Rents therefrom and apply the same as the court may direct, such receiver to have all of the rights and powers permitted under the laws of the State of Florida.  The right of the appointment of such receiver shall be a matter of strict right without regard to the value or the occupancy of the Mortgaged Property or the solvency or insolvency of Mortgagor.  The expenses, including receiver's fees, attorneys' fees, costs and agent's commission incurred pursuant to the powers herein contained, together with interest thereon at the Default Rate, shall be secured hereby and shall be due and payable by Mortgagor immediately without notice or demand.  Notwithstanding the appointment of any receiver or other custodian, Mortgagee shall be entitled as pledgee to the possession and control of any cash or deposits at the time held by, payable, or deliverable under the terms of this Mortgage to the Mortgagee, and the Mortgagee shall have the right to offset the unpaid Obligations against any such cash or deposits in such order as Mortgagee may elect.

*Florida Mortgage* - Page 16



8.1.6   Remedies as to Personal Property. Mortgagee may exercise any or all of its rights and remedies under the Uniform Commercial Code-Secured Transactions as adopted by the State of Florida or other applicable law as well as all other rights and remedies possessed by Mortgagee, all of which shall be cumulative. Mortgagee is hereby authorized and empowered to enter the Mortgaged Property or other place where the Personal Property may be located without legal process, and to take possession of the Personal Property without notice or demand, which hereby are waived to the maximum extent permitted by the laws of the State of Florida. Upon demand by Mortgagee, Mortgagor shall make the Personal Property available to Mortgagee at a place reasonably convenient to Mortgagee. Mortgagee may sell at one or more public or private sales and for such price as Mortgagee may deem commercially reasonable, any and all of the Personal Property secured by this Mortgage, and any other security or property held by Mortgagee and Mortgagee may be the purchaser of any or all of the Personal Property.

8.1.7   Other. Mortgagee may institute and maintain any suits and proceedings as the Mortgagee may deem advisable (a) to prevent any impairment of the Mortgaged Property by any acts which may be unlawful or in violation of this Mortgage, (b) to preserve or protect its interest in the Mortgaged Property, and (c) to restrain the enforcement of or compliance with any Governmental Requirement that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such Governmental Requirement might impair the security hereunder or be prejudicial to the Mortgagee's interest.

8.2   Remedies Cumulative and Concurrent. No right, power or remedy of Mortgagee as provided in the Note, this Mortgage, the Guaranty or the other Loan Documents is intended to be exclusive of any other right, power, or remedy of Mortgagee, but each and every such right, power and remedy shall be cumulative and concurrent and in addition to any other right, power or remedy available to Mortgagee now or hereafter existing at law or in equity and may be pursued separately, successively or together against Mortgagor, any Guarantor, or any endorser, co-maker, surety or guarantor of the Obligations, or the Mortgaged Property or any part thereof, or any one or more of them, at the sole discretion of Mortgagee. The failure of Mortgagee to exercise any such right, power or remedy shall in no event be construed as a waiver or release thereof.

8.3   Waiver, Delay or Omission. No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon, and no delay or omission of Mortgagee to exercise any right, power or remedy shall be construed to waive any such Event of Default or to constitute acquiescence therein.

8.4   Credit of Mortgagee. To the maximum extent permitted by the laws of the State of Florida, upon any sale made under or by virtue of this Article, Mortgagee may bid for and acquire the Mortgaged Property, or any part thereof, and in lieu of paying cash therefor may apply to the purchase price, any portion of or all of the unpaid Obligations in such order as Mortgagee may elect.

8.5   Sale. Any sale or sales made under or by virtue of this Article shall operate to divest all the estate, right, title, interest, claim and demand whatsoever at law or in equity, of the Mortgagor and all Persons, except tenants pursuant to Leases approved by Mortgagee, claiming by, through or under Mortgagor in and to the properties and rights so sold, whether sold to Mortgagee or to others.

8.6   Proofs of Claim. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition, seizure of the Mortgaged Property by any Governmental Authority, or other judicial proceedings affecting the Mortgagor, any Guarantor, any endorser, co-maker, surety, or guarantor of the Obligations, or any of their respective properties, the Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claim allowed in such proceedings for the entire unpaid Obligations at the date of the institution of such proceedings, and for any additional amounts which may become due and payable after such date.

8.7   Waiver of Redemption, Notice, Marshalling, Etc. Mortgagor hereby waives and releases, for itself and anyone claiming through, by, or under it, to the maximum extent permitted by the laws of the State of Florida:

(a)   all benefit that might accrue to Mortgagor by virtue of any present or future law exempting the Mortgaged Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment;

(b)   unless specifically required herein, all notices of default, or Mortgagee's actual exercise of any option or remedy under the Loan Documents, or otherwise, and

(c)   any right to have the Mortgaged Property marshalled.

8.8   Application of Proceeds. The proceeds of any sale of all or any portion of the Mortgaged Property shall be applied by Mortgagee first, to the payment of receiver's fees and expenses, if any, and to the payment of all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee, together with interest thereon at the Default Rate from the date so incurred, in connection with any entry, action or proceeding under this Article and, second, in such order as Mortgagee may elect, to the payment of the Obligations. Mortgagor shall be and remain liable to Mortgagee for any difference between the net proceeds of sale and the amount of the Obligations until all of the Obligations have been paid in full.

8.9   Discontinuance of Proceedings. If Mortgagee shall have proceeded to enforce any right under any Loan Document and such proceedings shall have been discontinued or abandoned for any reason, then except as may be provided in any written agreement between Mortgagor and Mortgagee providing for the discontinuance or abandonment of such proceedings, Mortgagor and Mortgagee shall be restored to their former positions and the rights, remedies and powers of Mortgagee shall continue as if no such proceedings had been instituted.

8.10   Mortgagee's Actions. Mortgagee may, at any time without notice to any Person and without consideration, do or refrain from doing any or all of the following actions, and neither the Mortgagor, any Guarantor, any endorser, co-maker, surety or guarantor of the Obligations, nor any other Person (hereinafter in this Section collectively referred to as the "Obligor") now or hereafter liable for the payment and performance of

*Florida Mortgage - Page 17*

the Obligations shall be relieved from the payment and performance thereof, unless specifically released in writing by Mortgagee: (a) renew, extend or modify the terms of the Note, this Mortgage, the Guaranty and the other Loan Documents, or any of them; (b) forbear or extend the time for the payment or performance of any or all of the Obligations; (c) apply payments by any Obligor to the reduction of the unpaid Obligations in such manner, in such amounts, and at such times and in such order and priority as Mortgagee may see fit; (d) release any Obligor; (e) substitute or release in whole or in part the Mortgaged Property or any other collateral or any portion thereof now or hereafter held as security for the Obligations without affecting, disturbing or impairing in any manner whatsoever the validity and priority of the lien of this Mortgage upon the Mortgaged Property which is not released or substituted, or the validity and priority of any security interest of the Mortgagee in such other collateral which is not released or substituted; (f) subordinate the lien of this Mortgage or the lien of any other security interest in any other collateral now or hereafter held as security for the Obligations; (g) join in the execution of a plat or re-plat of the Land; (h) join in and consent to the filing of a declaration of condominium or declaration of restrictive covenants regarding all or any part of the Land; (i) consent to the granting of any easement on the Land; and (j) generally deal with any Obligor or any other party as Mortgagee may see fit.

**ARTICLE IX**
**MORTGAGEE'S PERFORMANCE**

9.1      Governmental Regulation of Mortgagee.  Mortgagee is subject to various Governmental Authorities and the laws, rules and regulations enacted, adopted and promulgated by them.  To the extent that Mortgagee's authority to perform its obligations (if any) under this Mortgage, now or hereafter, may be limited or regulated by such Governmental Authorities, Mortgagee is hereby excused from such performance.

9.2      Mortgagee's Failure to Perform.  If Mortgagee fails to perform its obligations (if any) under this Mortgage (except to the extent excused therefrom as provided in Section 9.1 above), Mortgagor shall notify Mortgagee in writing (the "Notice") within thirty (30) days after Mortgagor's obtaining knowledge of such failure.  Each such Notice shall describe in detail the act or event constituting the non-performance by Mortgagee.  Mortgagee shall have thirty (30) days after its receipt of the Notice to cure any such failure to perform, unless such cure cannot be accomplished using reasonable efforts within said thirty (30) day period, in which case Mortgagee shall have such additional time as may be necessary, using reasonable efforts, to cure such non-performance (the "Mortgagee Cure Period").

9.3      Mortgagor's Rights and Remedies.  The giving of the Notice and the expiration of the Mortgagee Cure Period shall be conditions precedent to any right of the Mortgagor to bring an action against Mortgagee.  Mortgagor hereby expressly agrees that its sole remedy against Mortgagee in any such action shall be that of specific performance.

**ARTICLE X**
**MISCELLANEOUS**

10.1     Maximum Rate of Interest.  Nothing contained herein, in the Note or in any other Loan Document or in any instrument or transaction related thereto, shall be construed or so operate as to require the Mortgagor or any person liable for the payment of the Loan made pursuant to the Note, or liable for the payment of any Obligations, to pay interest, or any charge in the nature of interest, in an amount or at a rate which exceeds the maximum rate of interest allowed by applicable law, as amended from time to time.  Should any interest or other charges in the nature of interest received by Mortgagee or paid by the Mortgagor or any parties liable for the payment of the Loan made pursuant to the Note, or liable for the payment of any Obligations, exceed the maximum rate of interest allowed by applicable law, as amended from time to time, then such excess sum shall be credited against the principal balance of the Note or the balance of the other Obligations, as applicable, unless the Mortgagor or such other parties liable for such payments, as applicable, shall notify the Mortgagee, in writing, that the Mortgagor or such other party elects to have such excess sum returned to it forthwith, it being the intent of the parties hereto that under no circumstances shall the Mortgagor or any parties liable for any of the aforesaid payments be required to pay interest in excess of the maximum rate of interest allowed by applicable law, as amended from time to time.  The Mortgagee may, in determining the maximum rate of interest allowed under applicable law, as amended from time to time, take advantage of any state or federal law, rule or regulation in effect from time to time which may govern the maximum rate of interest which may be reserved, charged or taken.

10.2     Continuing Agreement.  This Mortgage and all of the Mortgagor's representations, warranties and covenants herein, Mortgagee's security interest in the Mortgaged Property and all of the rights, powers and remedies of Mortgagee hereunder shall continue in full force and effect until all of the Obligations have been paid and performed in full; until Mortgagee has no further obligation to make any advances under the Loan; and until Mortgagee, upon the request of the Mortgagor, has executed a satisfaction of mortgage.  Furthermore, if for any reason no Obligations are owing, notwithstanding such occurrence, this Mortgage shall remain valid and in full force and effect as to subsequent Obligations, so long as Mortgagee has not executed a satisfaction of mortgage; provided, however, that the indemnifications set forth in Article V of this Mortgage shall survive the satisfaction of this Mortgage.

10.3     Survival of Warranties and Covenants.  The warranties, representations, covenants and agreements set forth in this Mortgage shall survive the making of the Loan and the execution and delivery of the Note, and shall continue in full force and effect until all of the Obligations shall have been paid and performed in full.

10.4     No Representation By Mortgagee.  By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Mortgagee, pursuant to this Mortgage or the other Loan Documents, including, but not limited to, any officer's certificate, balance sheet, statement, survey or appraisal, Mortgagee shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Mortgagee.

10.5     Notice.  All notices, requests, consents, demands and other communications required or which any party desires to give under this Mortgage or any other Loan Document shall be in writing and, unless otherwise specifically provided in such other Loan Document, shall be

*Florida Mortgage - Page 18*

deemed sufficiently given or furnished if delivered by personal delivery, by courier, by registered or certified United States mail, postage prepaid, or by facsimile (with a confirmatory duplicate copy sent by first class United States mail), addressed to the party to whom directed at the addresses set forth above in the introductory paragraph of this Mortgage (unless changed by similar notice in writing given by the particular party whose address is to be changed). Any such notice or communication shall be deemed to have been given either at the time of personal delivery or, in the case of courier or mail, as of the date of first attempted delivery at the address and in the manner prescribed herein, or, in the case of facsimile, upon receipt; provided, however, that service of a notice required by any applicable statute shall be considered complete when the requirements of that statute are met. Notwithstanding the foregoing, no notice of change of address shall be effective except upon actual receipt. This Section shall not be construed in any way to affect or impair any waiver of notice or demand provided in any Loan Document or to require giving of notice or demand to or upon any person in any situation or for any reason.

10.6    Mortgagee's Right to Pay and Perform.  If Mortgagor shall fail to duly pay or perform any of the Obligations required by this Mortgage, then at any time thereafter without notice to or demand upon Mortgagor, and without waiving or releasing any right, remedy, or power of Mortgagee, and without releasing any of the Obligations or any Event of Default, Mortgagee may pay or perform such Obligation for the account of and at the expense of Mortgagor, and shall have the right to enter and to authorize others to enter upon the Mortgaged Property for such purpose and to take all such action thereon and with respect to the Mortgaged Property as may be necessary or appropriate for such purpose. All payments made and all costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Mortgagee, together with interest thereon at the Default Rate from the date incurred by Mortgagee shall be secured by this Mortgage and shall be due and payable by Mortgagor immediately, whether or not there be notice, demand, an attempt to collect same, or suit pending.

10.7    Covenants Running With the Land.  All covenants contained in this Mortgage shall be binding on the Mortgagor and shall run with the Land.

10.8    Successors and Assigns.  All of the terms of this Mortgage shall apply to and be binding upon, and inure to the benefit of, the heirs, devisees, personal representatives, successors and assigns of Mortgagor and Mortgagee, respectively, and all persons claiming under or through them.

10.9    Invalidity.

10.9.1    If any one or more of the provisions contained in this Mortgage is declared or found by a court of competent jurisdiction to be invalid, illegal, or unenforceable, such provision or portion thereof shall be deemed stricken and severed and the remaining provisions hereof shall continue in full force and effect.

10.9.2    If any one or more of the Obligations is declared or found by a court of competent jurisdiction to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining Obligations shall continue in full force and effect.

10.10    Modification.  No agreement unless in writing and signed by an authorized officer of Mortgagee and no course of dealing between the parties hereto shall be effective to change, waive, terminate, modify, discharge, or release in whole or in part any provision of this Mortgage.  No waiver of any rights or powers of Mortgagee or consent by it shall be valid unless in writing signed by an authorized officer of Mortgagee and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

10.11    Applicable Law.  This Mortgage shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

10.12    Strict Performance.  It is specifically agreed that time is of the essence as to all matters provided for in this Mortgage and that no waiver of any Obligation hereunder or secured hereby shall at any time thereafter be held to be a waiver of the Obligations.

10.13    Joint and Several Liability.  If more than one Person executes this Mortgage, each is and shall be jointly and severally liable hereunder; and if Mortgagor is a general partnership, then all partners in Mortgagor (and if Mortgagor is a limited partnership, then all general partners in Mortgagor) shall be jointly and severally liable hereunder, notwithstanding any contrary provision in the partnership laws of the State of Florida.

10.14    WAIVER OF TRIAL BY JURY.  MORTGAGOR AND MORTGAGEE (BY ACCEPTANCE OF THIS INSTRUMENT) HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS MORTGAGE, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE NOTE, OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGOR AND MORTGAGEE ENTERING INTO THE SUBJECT LOAN TRANSACTION.

*[Signature appears on following page]*

IN WITNESS WHEREOF, Mortgagor has executed this instrument as of the day and year written above.

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $660,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Signed, sealed and delivered
in the presence of:

MORTGAGOR:

ACHABAL TECHNOLOGIES, INC., a Florida corporation

Witness Name: Domaris Diaz

By: _____
Jorge L. Nobrega, President and Secretary

Witness Name: Anakrystine Vallin

(Corporate Seal)

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me this 24th day of January, 2019 by Jorge L. Nobrega, President and Secretary of ACHABAL TECHNOLOGIES, INC., a Florida corporation, on behalf of the corporation. He [_] is personally known to me or [X] has produced a Florida Driver License as identification.

[Notary Seal]

Notary Public

Printed Name: Anakrystine Vallin

My Commission Expires: _____

*Florida Mortgage - Page 20*

OR BK 31304 PG 2292
LAST PAGE

## EXHIBIT "A"

### LEGAL DESCRIPTION

Unit 7, Building 2, Big Ben Commerce Center, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 19561, Page 4562, and all amendments thereto, of the Public Records of Miami-Dade County, Florida.  The above description includes, but is not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.

*Florida Mortgage* - Page 21

# EXHIBIT 5

# UNLIMITED GUARANTY

January 24, 2019

## DEFINITIONS:

In this Guaranty the following terms shall have the following indicated meanings:

1.  Borrower:  ACHABAL TECHNOLOGIES, INC., a Florida corporation.

2.  Lender:  B&B Capital Group 26 LLC, a Florida limited liability company.

3.  Guarantors:  Jorge L. Nobrega, individually.

4.  Obligations: All indebtedness, liabilities, covenants, promises, agreements, terms, conditions and other obligations of every nature whatsoever (whether secured or unsecured) of the Borrower (including all indebtedness, obligations and liabilities of partnerships and joint ventures, created or arising while the Borrower may have been or may be a member thereof) to the Lender or any of Lender's affiliates and all renewals, modifications and extensions thereof howsoever, evidenced, whether now existing or hereafter created or arising, direct or indirect, absolute or contingent, joint or several, liquidated or unliquidated, matured or unmatured, and howsoever now or hereafter owned, held or acquired by Lender or any of Lender's affiliates, whether through discount, overdraft, purchase, direct loan or as collateral, or otherwise, including without limitation: (i) any letter of credit issued by Lender for the account of Borrower, (ii) all principal and interest, (including, without limitation, all interest accruing after a petition is filed in bankruptcy or similar proceedings, notwithstanding that Borrower's obligation to pay such interest may have ceased to exist by operation of law), (iii) all costs of collection, including reasonable attorneys' fees, paralegals' fees and legal assistants' fees (whether incurred with collection, trial, appeal, bankruptcy proceedings or otherwise notwithstanding that Borrower's obligation to pay such fees may have ceased to exist by operation of law), (iv) all documentary stamp tax and intangible tax (including interest and penalties, if any) determined to be due in connection with any evidence of said indebtedness, obligations and liabilities, and (v) all other amounts which Borrower is obligated to pay Lender under any instruments evidencing, relating to or securing said indebtedness, obligations and liabilities or any part thereof.

## CONSIDERATION:

As a material inducement to the Lender to extend credit to the Borrower and because Guarantors are shareholders, directors and/or officers of Borrower and/or will benefit from any credit extended to Borrower, the Guarantors make this Guaranty.

## TERMS, COVENANTS AND CONDITIONS:

1.  <u>Nature and Scope of Guaranty</u>.

    1.1  Each Guarantor irrevocably, absolutely and unconditionally guarantees to the Lender, the due and punctual payment and performance of the Obligations.

    1.2  This Guaranty is an absolute and unconditional guaranty of payment and performance and not one of collection and all Obligations guaranteed hereby shall be conclusively presumed to have been created in reliance hereon.

1.3    Guarantors will make all payments hereunder in lawful money of the United States of America in immediately available funds without set-off or counterclaim.

1.4    Guarantors' liability hereunder shall remain unchanged irrespective of any invalidity, illegality or unenforceability of or any defense (whether arising by reason of disability, dissolution or liquidation of the Borrower, or lack of corporate or partnership power or authority of the Borrower, or otherwise) to the Obligations or any portion thereof, or of any security for the Obligations, or any portion thereof, it being understood and agreed that Guarantors shall be and remain fully bound hereunder regardless of whether Borrower shall be found not liable on the Obligations or any other guarantor be relieved or released from liability for any reason whatsoever.

1.5    In case of the dissolution, liquidation or insolvency (howsoever evidenced) of the Borrower, or in case any bankruptcy, reorganization, debt arrangement, adjustment, composition, or other proceeding under any bankruptcy or insolvency law, or any dissolution, liquidation or receivership proceeding is instituted by or against the Borrower, or Borrower admits in writing its inability to pay its debts as they mature, all Obligations then existing shall at the option of the Lender, without notice to anyone, immediately become due and payable by the Guarantors.

1.6    Each Guarantor acknowledges that Lender has no obligations or duties to Guarantors under this Guaranty.

2.    Discharge of Guarantor.  Provided that there are not then any existing commitments on the part of the Lender with respect to any loans to the Borrower, Guarantors shall be discharged from liability hereunder only upon the full payment and performance of the Obligations; provided, however, that if any sums paid to and applied by Lender toward the Obligations are thereafter required to be repaid to the Borrower or to any affiliate of Borrower, or to any trustee, receiver or other person, by reason of the application of the Bankruptcy Code, the Uniform Fraudulent Transfer Act or any other law relating to creditors' rights generally, then this Guaranty shall be reinstated, ab initio, as if such portion of the Obligations had never been paid.

3.    Assent to Agreements made by Borrower.  Guarantors assent, without notice to Guarantors, to all terms and agreements heretofore or hereafter made by Borrower with Lender insofar as same may affect the Obligations.

4.    Consent to Lender's Actions or Inactions Regarding the Borrower, the Guarantors, and the Collateral.  Each Guarantor consents that Lender may at any time and from time to time, (whether before or after termination of this Guaranty) before or after any default by the Borrower, with or without further notice to or assent from Guarantors:

4.1    Either with or without consideration to the Borrower, any guarantor, pledgor, or grantor of any collateral, exchange, release, surrender (in whole or in part), or fail to protect or to preserve the value of any collateral now or hereafter held as security for the Obligations, or waive, release, or subordinate any lien or security interest (in whole or in part) in or on any such collateral;

4.2    Waive or delay the exercise of any of its rights or remedies against the Borrower or any other person or entity, including, without limitation, any guarantor; notwithstanding any waiver or delay, the Lender shall not be precluded from further exercise of any of its rights, powers or privileges expressly provided for herein or otherwise available, it being understood that all such rights and remedies are cumulative;

- 2 -



4.3     Waive or extend the time of Borrower's performance of any and all terms, provisions and conditions set forth in any instrument or agreement evidencing or relating to the Obligations;

4.4     Release the Borrower or any other person or entity, including, without limitation, any guarantor, from all or any portion of the Obligations;

4.5     Proceed against the Guarantors without first proceeding against or joining the Borrower or any guarantor or any endorser of any note or other agreement evidencing the Obligations, or any property securing the payment or performance of the Obligations;

4.6     Renew, extend or modify the terms of the Obligations or any instrument or agreement evidencing or relating to the Obligations;

4.7     Apply payments by the Borrower, the Guarantors, or any other person or entity to the reduction of the Obligations in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit; and

4.8     Generally deal with the Borrower or any of the security for the Obligations or other person or party as the Lender may see fit.

The Guarantors shall remain bound under this Guaranty notwithstanding any such exchange, release, surrender, subordination, waiver (whether or not such waiver is oral or written), delay, proceeding, renewal, extension, modification, application, act or failure to act, or other dealing described in Subsections 4.1 through 4.8, inclusive, above even though done without notice to or consent from the Guarantors.

5.     <u>Waiver of Notice</u>.  Each Guarantor waives all notices whatsoever with respect to this Guaranty and with respect to the Obligations, including, but not limited to, notice of:

5.1     The Lender's acceptance of this Guaranty or its intention to act, or its action, in reliance hereon;

5.2     The extension of credit by Lender to Borrower;

5.3     Presentment and demand for payment of the Obligations or any portion thereof;

5.4     Protest and notice of dishonor or non-payment with respect to the Obligations or any portion thereof;

5.5     Any default by Borrower or any pledgor, grantor of security, or any guarantor, including the Guarantors;

5.6     Any other notices to which the Guarantors may otherwise be entitled; and

5.7     Any demand for payment under this Guaranty.

6.     <u>Waiver of Marshalling, Statute of Limitations and Wage Exemption</u>.  Each Guarantor waives (i) any right or claim of right to cause a marshalling of any of the Borrower's assets or the assets of any other party now or hereafter held as security for the Obligations and (ii) the benefit of any statute of limitations affecting the liability of Guarantors hereunder.

- 3 -



7.      Subordination.

7.1     All rights and claims of Guarantors (collectively the "Guarantor Claims") against Borrower or any of Borrower's property now or hereafter existing shall be subordinate and subject in right of payment to the prior payment in full of and the performance of all of the Obligations.

7.2     Until the Obligations have been paid and performed in full and Guarantors shall have performed all of Guarantors' obligations hereunder, Guarantors shall not receive or collect, directly or indirectly, from Borrower or any other party any payment upon the Guarantor Claims, nor seek to realize upon any collateral securing such Guarantor Claims.  Notwithstanding the foregoing, if Guarantors should receive any such payment, Guarantors agree to hold same in trust for Lender and agree that Guarantors shall have absolutely no rights in or to or dominion over such payments except to pay them promptly to Lender, and Guarantors hereby covenant to do so. For purposes of this Section 7, as long as no event of default shall have occurred, regular salaries and distributions to Guarantors shall not be considered Guarantor Claims.

8.      Grant of Security Interest.  To secure the prompt payment and performance of the Obligations, the Guarantors grant to Lender a continuing first lien security interest in the Guarantor Claims and in all property of the Guarantors delivered concurrently herewith or now, or at any time hereafter in the possession of the Lender, and all proceeds of all such property.  Guarantors agree that the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code-Secured Transactions as adopted by the State of Florida with respect to all of the aforesaid property, including, without limitation, the right to sell or otherwise dispose of any or all of such property.  Following a default by Borrower with respect to the Obligations, Lender may, without further notice to anyone, apply or set off any balances, credits, deposits, accounts, monies or other indebtedness at any time created by or due from the Lender to the Guarantors against the amounts due hereunder.  Any notification of intended disposition of any property required by law shall be deemed reasonably and properly given if given at least five (5) calendar days before such disposition.

9.      Subrogation Rights.  Until the Obligations have been paid and performed in full and the Guarantors shall have performed all of the Guarantors' obligations hereunder, Guarantors will not assert any right to which Guarantors may be or may become entitled, whether by subrogation, reimbursement, exoneration, contribution, indemnification or otherwise, against the Borrower or any other guarantor, or against any of their respective properties, by reason of the payment and performance by the Guarantors of its obligations under this Guaranty.

10.     Representations and Warranties.

10.1    Each Guarantor represents and warrants to Lender that:

(a)     The execution, delivery and performance by Guarantors of this Guaranty, (i) does not require the approval of any governmental authority, whether federal, state, county, or municipal (collectively the "Governmental Authority"), and (ii) will not violate any law, order, regulation, authorization or similar matters (collectively the "Governmental Requirements"), any indenture, agreement or other instrument to which Guarantors are a party or by which Guarantors or any of Guarantors' property is bound, or be in conflict with, result in a breach of or constitute (with due notice or the lapse of time, or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Guarantors' properties or assets, except as contemplated by the provisions of this Guaranty.

- 4 -



(b)     This Guaranty when executed and delivered by Guarantors will constitute the legal, valid and binding obligations of Guarantors enforceable in accordance with the terms hereof.

(c)     There are no judgments outstanding against Guarantors and there is no action, suit, proceeding, or investigation now pending (or to the best of Guarantors' knowledge after diligent inquiry threatened) against, involving or affecting a Guarantor or any of Guarantors' properties or any part thereof, at law, in equity or before any Governmental Authority that if adversely determined as to Guarantors, would result in a material adverse change in the business or financial condition of Guarantors, or Guarantors' operation and ownership of any of its properties, nor is there any basis for such action, suit, proceeding, or investigation.

(d)     All balance sheets, statements of profit and loss and other financial data that have been given to Lender with respect to Guarantors, (i) are complete and correct in all material respects; (ii) do accurately present the financial condition of Guarantors as of the dates, and the results of Guarantors' operations, for the periods for which the same have been and will be furnished; and (iii) have been prepared in accordance with generally accepted accounting principles consistently followed throughout the periods covered and to be covered thereby; all balance sheets disclose all known liabilities, direct and contingent, as of their respective dates; and there has been no change in the condition of the Guarantors, financial or otherwise, since the date of the most recent financial statements given to Lender with respect to Guarantors other than changes in the ordinary course of business, none of which changes have been materially adverse.

(e)     Guarantors are not insolvent and will not be rendered insolvent by the execution, delivery, payment and performance of this Guaranty.

10.2    Each Guarantor acknowledges that the Lender has relied upon the Guarantors' representations, has made no independent investigation of the truth thereof and is not charged with any knowledge contrary thereto that may have been received by any officer, director, employee, or shareholder of Lender. Each Guarantor further acknowledges that it has not been induced to execute and deliver this Guaranty as a result of, and is not relying upon, any representations, warranties, agreements, or conditions, whether express or implied, written or oral, by Lender or by any officer, director, employee, or shareholder of Lender.

11.     Financial Statements.     Guarantors will furnish to Lender personal financial statements and liquidity verification of Guarantors prepared and certified in a manner satisfactory to Lender, all in such detail as Lender may reasonably require, by no later than each anniversary of the date of the prior statement and received by Lender no later than thirty (30) days after each anniversary date of the date of the prior statement.

12.     Tax Returns.  Guarantors will furnish to Lender no later than thirty (30) days after filing, a copy of Guarantors' annual income tax return, including all K-1 Schedules.

13.     Transfer of Assets.  Until the Obligations have been paid and performed in full and Guarantors shall have performed all of Guarantors' obligations hereunder, Guarantors shall not, directly or indirectly, sell, convey, or transfer or permit to be sold, conveyed, or transferred any of Guarantors' assets to any party or entity to which Guarantors are related or in which Guarantors have an interest. Notwithstanding anything to the contrary in this Section 13, such transfers by Guarantors may be made with Lender's consent, not to be unreasonably withheld, if Lender deems in its reasonable judgment such transfers to be a part of Guarantors' bona fide tax or estate planning.

- 5 -

14.     Modification.  No agreement unless in writing and signed by an authorized officer of Lender and no course of dealing between Guarantors and Lender shall be effective to change or modify or to discharge in whole or in part this Guaranty.  No waiver of any rights or powers of Lender or consent by it shall be valid unless in writing signed by an authorized officer of Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

15.     Cost of Enforcement.  Guarantors agree that, whenever an attorney is used to obtain payment or performance under or otherwise enforce this Guaranty or to enforce, declare, or adjudicate any rights or obligations under this Guaranty, whether by suit or any other manner whatsoever, reasonable attorneys' fees, paralegals' fees, legal assistants' fees and costs (whether incurred in collection, litigation, bankruptcy proceedings, appeals, or otherwise) shall be payable by Guarantors to Lender.

16.     Submission to Jurisdiction.  Each Guarantor irrevocably and unconditionally (a) agrees that any suit, action, or other legal proceeding arising out of or relating to this Guaranty may be brought, at the option of the Lender, in a court of record of the State of Florida in Miami-Dade County, in the United States District Court for the Southern District of Florida, or in any other court of competent jurisdiction; (b) consents to the jurisdiction of each such court in any such suit, action, or proceeding; (c) waives any objection which it may have to the laying of venue of any such suit, action, or proceeding in any of such courts; and (d) agrees that service of any court paper may be effected on Guarantors by mail, addressed and mailed as provided in Section 16 hereof or in such other manner as may be provided under applicable laws or court rules in said State.

17.     Notice.  All notices, demands, requests and other communications, if any, required under this Guaranty shall be given in writing delivered by hand, telecopy, or mail and shall be conclusively deemed to have been received if delivered or attempted to be delivered by telecopy or United States first class mail, return receipt requested, postage prepaid, addressed to the party for whom it is intended at its address set forth below.  Any party may designate a change of address by written notice to the other party, received by such other party at least ten (10) days before such change of address is to become effective.  Guarantors' address for the purpose of this Section is:

> Jorge L. Nobrega
> 4769 NW 72 Avenue
> Miami, FL 33166

Lender's address for the purpose of this Section is:

> 20200 W. Dixie Highway, Suite 1205
> Aventura, FL 33180
> Attn:  Freddy Boulton, Authorized Member

This Guaranty does not require that Lender give Guarantors any notice, demand, or request and this Section shall not be construed to create such a requirement.

18.     Choice of Law.  This Guaranty shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

- 6 -



19.    Gender and Number. In this Guaranty, wherever the context so requires, the use of any gender shall include all other genders, and words in the singular shall include the plural and the plural shall include the singular.

20.    Successors and Assigns. This Guaranty shall inure to the benefit of the Lender, its successors and assigns, and shall be binding upon the Guarantors and its respective heirs, personal representatives, successors and assigns.

21.    Savings Clause. If any provision or portion of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty, and the remaining provisions and portions thereof shall continue in full force and effect.

22.    Headings. The captions of Sections of this Guaranty are for convenient reference only, and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Guaranty.

23.    Joint and Several Liability. The liability of the Guarantors hereunder shall be joint and several with the Borrower and all other guarantors of the Obligations.

24.    Waiver of Trial by Jury. LENDER AND EACH GUARANTOR HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS GUARANTY, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY FROM GUARANTORS AND FOR GUARANTORS GIVING THIS GUARANTY TO LENDER.

[Signatures appear on following page]



- 7 -

_____
Jorge L. Nobrega

STATE OF FLORIDA        )
                             ) SS:

COUNTY OF MIAMI-DADE    )

The foregoing instrument was sworn to and subscribed before me this 24th day of January, 2019 by Jorge L. Nobrega, individually.

_____ Personally Known  OR  __X__ Produced Identification

Type of Identification Produced:  A Florida Driver License

Print or Stamp Name: Anakrystine Vattin
Notary Public, State of Florida at Large
Commission No.:
My Commission Expires:

ANAKRYSTINE VALLIN
MY COMMISSION EXPIRES
OCTOBER 28, 2020
#GG 042545
Bonded thru
Notary Public Underwriters
NOTARY PUBLIC, STATE OF FLORIDA

- 8 -

# EXHIBIT 6

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM



CFN 2019R0129621
OR BK 31344 Pgs 4410-4413 (4Pgs)
RECORDED 02/28/2019 14:50:23
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Seymour N. Singer, Esq.        (954) 509-3807
**B. Email Address:** seymour@seymournsingerpa.com

**C. SEND ACKNOWLEDGMENT TO:**

| | |
|---|---|
| Name | Seymour N. Singer, Esq. |
| | Seymour N. Singer, P.A. |
| Address | 7401 Wiles Road, Suite 230 |
| City/State/Zip | Coral Springs, Florida 33067 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ACHABAL TECHNOLOGIES, INC., a Florida corporation | | | | |
| 1.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1.c MAILING ADDRESS Line One | This space not available. | | | |
| 4769 NW 72 Ave | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | Miami | FL | 33166 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2.c MAILING ADDRESS Line One | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or Name of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| B&B Capital Group 26 LLC, a Florida limited liability company | | | | |
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3.c MAILING ADDRESS Line One | This space not available. | | | |
| 20200 W. Dixie Highway, Suite 1205 | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | Aventura | FL | 33180 | USA |

**4.** This **FINANCING STATEMENT** covers the following collateral:

SEE ATTACHED RIDER TO FINANCING STATEMENT.

**5. ALTERNATE DESIGNATION** (if applicable)    ☐ LESSEE/LESSOR    ☐ CONSIGNEE/CONSIGNOR    ☐ BAILEE/BAILOR

☐ AG LIEN    ☐ NON-UCC FILING    ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

## **RIDER TO FINANCING STATEMENT**

This Financing Statement covers the following types and items of property (the "Mortgaged Property"):

All property rights of any kind whatsoever, whether real, personal, mixed, or otherwise, and whether tangible or intangible, described in that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Mortgage") dated January 24, 2019 from the Debtor ("Mortgagor"), as identified hereinabove, in favor of the Secured Party ("Mortgagee"), as identified hereinabove, encumbering that certain parcel of real estate (the "Land") situate in Miami-Dade County, Florida, and legally described on <u>Exhibit "A"</u> attached hereto and made a part hereof, together with all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, projections, appurtenances, water rights including riparian and littoral rights, streets, ways, alleys, and strips and gores of land now or hereafter in any way belonging, adjoining, crossing, or pertaining to the Land; and all of the following property of Mortgagor whether now owned or existing, or hereafter acquired or arising, located in, or on, or pertaining to, or used or intended to be used in connection with or resulting or created from the ownership or development or management or operation of the Land:

(i)      all "Improvements" (as said term is defined in the Mortgage) and landscaping;

(ii)      all "Fixtures" (as said term is defined in the Mortgage) and goods to become Fixtures;

(iii)      all accounts, accounts receivable, other receivables, contract rights, chattel paper, instruments and documents; any other obligations or indebtedness owed to Mortgagor arising from the Mortgaged Property; all rights of Mortgagor to receive any performance or any payments in money or kind; all guaranties of the foregoing and security therefor; all of the right, title and interest of Mortgagor in and with respect to the goods, services, or other property that gave rise to or that secure any of the foregoing, and all rights of Mortgagor as an unpaid seller of goods and services, including, but not limited to, the rights to stoppage in transit, replevin, reclamation, and resale;

(iv)      all goods, including, without limitation, all machinery, equipment, furniture, furnishings, building supplies and materials, appliances, business machines, tools, aircraft and motor vehicles of every kind and description, and all warranties and guaranties for any of the foregoing;

(v)      all Inventories (as defined in the mortgage), merchandise, raw materials, parts, supplies, work-in-process and finished products intended for sale, of every kind and description, in the custody or possession, actual or constructive, of Mortgagor including such inventory as is temporarily out of the custody or possession of Mortgagor, any returns upon any accounts and other proceeds, resulting from the sale or disposition of any of the foregoing, including, without limitation, raw materials, work-in-process, and finished goods;

(vi)      all franchise, license, management or other agreements with respect to the operation of the Mortgaged Property or the business conducted therein (provided all of such agreements shall be subordinate to this Mortgage, and Mortgagee shall have no responsibility for the performance of Mortgagor's obligations thereunder);

(vii)      all general intangibles, including, without limitation, payment intangibles, corporate or other business records and books, computer records whether on tape disc or otherwise stored, blueprints, surveys, architectural or engineering drawings, plans and specifications, trademarks, tradenames, goodwill, software, symbols, telephone numbers, licenses, governmental approvals, franchises, permits, payment and performance bonds, tax refund claims, and agreements with utility companies, together with any deposits, prepaid fees and charges paid thereon;

(viii)    all "Leases" and "Rents" (as said terms are defined in the Mortgage);

(ix)    all judgments, awards of damages and settlements from any condemnation or eminent domain proceedings regarding the Land, the Improvements or any of the Mortgaged Property;

(x)    all insurance policies required by the Mortgage, the unearned premiums therefor and all loss proceeds thereof;

(xi)    all awards and refunds hereafter made with respect to any "Imposition" (as said term is defined in the Mortgage);

(xii)    all rights of Mortgagor as "developer," "declarant" or "sponsor" under any declaration or other document encumbering the Land or any portion thereof;

(xiii)    all rights to water and sewer connections and transferable development rights and transportation, school, water and road impact fee credits;

(xiv)    all other personal property, including, without limitation, building permits, surveys, architectural and engineering plans and specifications, shop drawings, governmental approvals, licenses, agreements with any utility companies (together with any deposits, prepaid fees and charges paid thereon) and any other consents, approvals and rights which it may now or hereafter own with respect to or in connection with the Mortgaged Property, management contracts, construction contracts, architectural contracts, service contracts, engineering contracts, advertising contracts, contracts for purchase and sale of any of the Mortgaged Property, purchase orders, equipment leases, monies in escrow accounts, reservation agreements, prepaid expenses, deposits and down payments with respect to the sale or rental of any of the Mortgaged Property, options and agreements with respect to additional real property for use or development of the Mortgaged Property, end-loan commitments, surveys, abstracts of title, all brochures, advertising materials, condominium documents and prospectuses; and

(xv)    all proceeds, products, replacements, additions, betterments, extensions, improvements, substitutions, renewals and accessions of any of the foregoing.

**THE DEBTOR IS THE FEE SIMPLE OWNER OF THE PROPERTY.**

OR BK 31344 PG 4413
LAST PAGE

### EXHIBIT "A"

### LEGAL DESCRIPTION

Unit 7, Building 2, Big Ben Commerce Center, a Condominium, all as set forth in
the Declaration of Condominium and the Exhibits attached thereto and forming a
part thereof, as recorded in Official Records Book 19561, Page 4562, and all
amendments thereto, of the Public Records of Miami-Dade County, Florida. The
above description includes, but is not limited to, all appurtenances to the
condominium unit above described, including the undivided interest in the
common elements of said condominium.

# EXHIBIT 7

CFN: 20210136561 BOOK 32365 PAGE 22
DATE:02/23/2021  12:29:32 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared by:**
Seymour N. Singer, Esq.
Seymour N. Singer, P.A.
7401 Wiles Road, Suite 230
Coral Springs, Florida 33067

## MODIFICATION OF NOTE AND MORTGAGE

**THIS MODIFICATION OF NOTE AND MORTGAGE** is made and entered into as of the 1st day of February, 2021 by and between **ACHABAL TECHNOLOGIES, INC.,** a Florida **corporation** ("Borrower"), and **B&B CAPITAL GROUP 26 LLC,** a Florida limited liability company ("Lender"), and provides as follows:

**WHEREAS,** the Borrower did execute in favor of Lender a certain Promissory Note dated January 24, 2019, in the stated principal amount of Six Hundred Sixty Thousand and 00/100 Dollars ($660,000.00), having a maturity date of February 1, 2021 (the "**Note**"); and

**WHEREAS,** the obligations of the Borrower under the Note are secured by that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing executed and delivered by Borrower in favor of B&B CAPITAL GROUP 26 LLC, a Florida limited liability company, dated January 24, 2019, and recorded January 28, 2019 as CFN #2019R0053794 in Official Records Book 31304 at Page 2272 of the public records of Miami-Dade County, Florida, and that certain UCC-1 Financing Statement delivered by Borrower in favor of B&B CAPITAL GROUP 26 LLC and recorded February 28, 2019 as CFN #2019R0129621 in Official Records Book 31344 at Page 4410 of the public records of Miami-Dade County, Florida (collectively, the "**Mortgage**"), and that certain UCC-1 Financing Statement delivered by Borrower in favor of B&B CAPITAL GROUP 26 LLC and filed in the Office of the Secretary of State of Florida January 29, 2019 as document number 201907565807 (the "**UCC**"), which encumber the following described property, to wit:

Unit 7, Building 2, Big Ben Commerce Center, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 19561, Page 4562, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but is not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.

**WHEREAS,** Borrower has requested Lender and Lender has agreed to extend the maturity date of the Note.

**NOW, THEREFORE,** in consideration of the mutual promises set forth herein and the sum of Ten ($10.00) Dollars and other good and valuable consideration, the parties hereto agree as follows:

1.      The above recitals are true and correct and are hereby made a part of this Agreement.

2.      Borrower acknowledges that the present principal balance outstanding under the Note is Six Hundred Sixty Thousand and 00/100 Dollars ($660,000.00) plus interest from February 1, 2021, and that Borrower has no claims, offsets, or other actions against Lender in relation to the Note, Mortgage, UCC or any other loans or obligations which currently exist between Borrower and Lender.

3.      The Mortgage and UCC are hereby modified to secure payment and performance of the Note as modified herein. The Note is hereby modified as follows:

CFN: 20210136561 BOOK 32365 PAGE 23

a.      The "Maturity Date" is hereby extended to February 1, 2022, on which date the entire principal balance and all accrued unpaid interest shall be due and payable in full.

b.      Paragraph 7 of the Note is hereby reimposed as of February 1, 2021.

c.      Paragraph 5 of the Note is hereby amended to read as follows:

Extension.  Borrower may request in writing to Lender an extension of the Maturity Date for an additional six (6) month term (the "Extension Term"), provided that such request is made at least sixty (60) days in advance of the original Maturity Date and is accompanied by payment to Lender of an additional fee to Lender in the amount of one (1%) percent of the then outstanding principal balance of this Note (the "Extension Fee").  If Lender, in its sole and exclusive discretion, agrees in writing to extend such Maturity Date, Lender shall retain the Extension Fee and all terms and conditions of this Note (including its payment terms) and the "Loan Documents" as defined herein shall remain in full force and effect during the Extension Term, and the Maturity Date shall be extended for said six (6) month Extension Term. If Lender, in its sole and exclusive discretion, does not agree in writing to extend such Maturity Date, Lender shall return the Extension Fee to Borrower and the Maturity Date shall remain unchanged.

4.      **There has been no additional advance of funds by Lender in favor of Borrower in connection with this Agreement or the modification of the Note hereby; this document has been executed by the original obligor on the Note and Mortgage, and no new obligors have been added. Therefore, no additional documentary stamps or intangible taxes are due or payable in connection with the execution and delivery of this Agreement or the modification of the Note hereunder.**  In any event, however, Borrower acknowledges and agrees, upon Lender's request, to pay all taxes, including without limitation, additional documentary stamps and intangible taxes, which are deemed to be due and payable in connection with this Agreement or the modification of the Note, if any.

5.      Except to the extent specifically and expressly modified herein, the terms and provisions of the Mortgage, Note, UCC and all other documents executed or delivered in connection therewith and herewith shall remain unmodified and in full force and effect.

6.      BORROWER   AND   LENDER   HEREBY   KNOWINGLY,   IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS AGREEMENT, THE NOTE, MORTGAGE OR UCC, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE NOTE, MORTGAGE OR UCC OR ANY DOCUMENT OR INSTRUMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH ("LOAN DOCUMENT"), OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO OR TO ANY LOAN DOCUMENT.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER ENTERING INTO THE SUBJECT LOAN TRANSACTION.

7.      Borrower hereby agrees that, in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, including the forbearance of Lender from exercising its rights and remedies otherwise available to it under the Loan Documents, as hereby

CFN: 20210136561 BOOK 32365 PAGE 24

amended, the receipt and sufficiency of which are hereby acknowledged, in the event Borrower shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended, (ii) be the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator, (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents, as hereby amended, and as otherwise provided by law.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals as of the day and year first above written.

Signed, Sealed and Delivered
in the presence of:

LENDER:

B&B CAPITAL GROUP 26 LLC, a Florida
limited liability company

By: _____

Print Name: _____Judy Viever_____

Print Name: ___IHEL BEN NAIM___

Print Name:   Izak Ben Naim
Title:        AUTHORIZED MEMBER
Address:      800 SE 4 Ave., Suite 804
              Hallandale Beach, FL 33009

STATE OF FLORIDA      )
                      ) §§
COUNTY OF BROWARD     )

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization this _16th_ of February, 2021, by Izak Ben Naim, as Authorized Member of B&B Capital Group 26, LLC, a Florida limited liability company, on behalf of the company, who ☑ is personally known to me or who ☐ has produced _____ as identification.

_____
NOTARY PUBLIC, State of Florida

ALISSON MCDEVITT
MY COMMISSION # GG 118484
EXPIRES: June 25, 2021
Bonded Thru Notary Public Underwriters

Print Name: _ALISSON MCDEVITT_

My Commission Expires: _06/25/21_

CFN: 20210136561 BOOK 32365 PAGE 25

WITNESSES:

*Christine Pardo*

_____

Print Name: Christine Pardo

*Andres Pardo*

_____

Print Name: Andres pardo

2021-02-22

STATE OF FLORIDA        )
                        ) §§
COUNTY OF Broward       )

BORROWER:

ACHABAL TECHNOLOGIES, INC., a Florida corporation

By: _____

Print Name:  Jorge L. Nobrega
Title:       PRESIDENT and SECRETARY
Address:     4696 NW 74th Avenue
             Miami, FL 33166

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☑ online notarization this 2021-02 day of February, 2021, by Jorge L. Nobrega, as President and Secretary of ACHABAL TECHNOLOGIES, INC., a Florida corporation, on behalf of the company, who ☐ is personally known to me or who ☑ has produced a Florida Driver License as identification.

*Christine Pardo*



**CHRISTINE PARDO**
Notary Public - State of Florida
Comm #: GG357076
My Comm Exp: October 31, 2023

NOTARY PUBLIC  Christine Pardo

Print Name: Notary Public State of Flo

My Commission Expires: Oct. 31, 2023

# EXHIBIT 8

CFN: 20210793423 BOOK 32808 PAGE 1894
DATE:10/22/2021  10:36:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CT

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

B&B CAPITAL GROUP 26, LLC       CASE NO.:
a Florida Limited Liability Company,

                GENERAL JURISDICTION DIVISION

      Plaintiff(s),

vs.

ACHABAL TECHNOLOGIES, INC,
A Florida Corporation, et al.,

      Defendants.

_____/

## NOTICE OF LIS PENDENS

To the above-named Defendant(s) and all others whom it may concern:

You are notified of the institution of this action by the above-named Plaintiff, against you seeking to foreclose on the mortgage(s) recorded on January 28th, 2019, in the Official Records Book 31304, at Page 2272-2298, Public Records of Miami-Dade County, Florida, as well as the Mortgage Modification Agreement, which was recorded on February 23, 2021, in the Official Records Book 32365 Page 22, Public Records of Miami-Dade County, Florida. which encumbers the property legally described as:

### See Exhibit "A"

Dated this ____**6**____ day of October, 2021.

                ***ISAAC & SALGADO GRONDIN, P.L.***
                267 Minorica Avenue, Suite 100
                Coral Gables, Florida 33134
                Tel No.:   305-444-7087

**By:**   ***/s/ jorge isaac***_____
         JORGE E. ISAAC, ESQ.
         Florida Bar No.: 0845841

021-023580-CA-01

# EXHIBIT "A"

Unit 7, Building 2, Big Ben Commerce Center, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 19561, Page 4562, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but is not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CR-20442-PCH/Becerra

UNITED STATES OF AMERICA,

vs.

JORGE LUIS NOBREGA RODRIGUEZ,

Defendant.
_____/

## PRELIMINARY ORDER OF FORFEITURE

**THIS MATTER** is before the Court upon motion of the United States of America (the

"United States") for entry of a Preliminary Order of Forfeiture ("Motion") against Defendant Jorge

Luis Nobrega Rodriguez (the "Defendant"). [ECF No. 36]. The Court has considered the Motion,

is otherwise advised in the premises, and finds as follows:

On August 26, 2021, a federal grand jury returned an Indictment charging the Defendant

in Count 1 with conspiracy to violate the International Emergency Economic Powers Act

("IEEPA"),[1] in violation of 18 U.S.C. § 371, which conspiracy was to violate 50 U.S.C. § 1705(a),

31 C.F.R. §§ 591.201, and Executive Orders ("EOs") 13692 and 13850, in Count 2 with conspiracy

to commit money laundering in violation of 18 U.S.C. § 1956(h), and in Counts 3-7 with

laundering of monetary instruments in violation of 18 U.S.C. § 1956(a)(2)(B)(i). Indictment, ECF

No. 9. The Indictment also contained forfeiture allegations, which alleged, *inter alia*, that upon

conviction of a conspiracy to violate 50 U.S.C. § 1705(a), the Defendant shall forfeit any property,

real or personal, which constitutes or is derived from proceeds traceable to a conspiracy to violate

IEEPA. *Id.* at 11-12. The Indictment alleged that the property subject to forfeiture as a result of

_____

[1] Codified at Title 50, United States Code, Sections 1701-1706.

the alleged offense includes, but is not limited to a forfeiture money judgment in the amount of $3,783,337.93 in U.S. currency. *See id.* at 12.

The United States has since identified the following additional assets subject to forfeiture:

    i.    real property located at 4696 N.W. 74 Ave., Unit 7, Miami, Florida 33166;

    ii.    real property located at 5077 N.W. 7 St., Unit 1502, Miami, Florida 33126;

    iii.    real property located at 5085 N.W. 7 St., Unit 906, Miami, Florida 33126; and

    iv.    real property located at 4543 Saddleworth Cir., Orlando, Florida 32826.

*See* Bills of Particulars, ECF Nos. 11, 24.

On March 9, 2022, the Court adopted U.S. Magistrate Judge Jacqueline Becerra's report and recommendation and accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Order, ECF No. 34; Plea Agreement ¶ 1, ECF No. 31. As part of the guilty plea, the Defendant agreed to the forfeiture of real property located at 4696 N.W. 74 Ave., Unit 7, Miami, Florida 33166; real property located at 5077 N.W. 7 St., Unit 1502, Miami, Florida 33126; real property located at 5085 N.W. 7 St., Unit 906, Miami, Florida 33126; and real property located at 4543 Saddleworth Cir., Orlando, Florida 32826, and a forfeiture money judgment in the amount of $3,743,337.93. Specifically, among other provisions in the Plea Agreement, the Defendant agreed to the following:

> 13.    The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense, a conspiracy to violate 50 U.S.C. § 1705(a) and (c), pursuant to 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461(c), and the provisions of 21 U.S.C. § 853. In addition, the defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The property subject to forfeiture includes, but is not limited to:
>
>     a.    forfeiture money judgment in the sum of at least $3,743,337.93 in U.S. currency, which sum represents the value of the property subject to forfeiture; and;

2

    b.   substitute property, including, but not limited to:

       i.   real property located at 4696 N.W. 74 Ave., Unit 7, Miami, Florida 33166;

      ii.   real property located at 5077 N.W. 7 St., Unit 1502, Miami, Florida 33126;

     iii.   real property located at 5085 N.W. 7 St., Unit 906, Miami, Florida 33126; and

     iv.   real property located at 4543 Saddleworth Cir., Orlando, Florida 32826.

Plea Agreement ¶ 13.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, ECF No. 32.

Subsequently, Defendant offered for the Government to forfeit, as an additional substitute asset, an aircraft in which he held an interest, a 1997 Hawker Siddeley 125 Series 700A, Serial number NA0212, Registration number N118CD.

On March 8, 2015, the President issued Executive Order 13692, which declared that the situation in Venezuela, including certain actions and policies of the Government of Venezuela, constituted an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States and declared a national emergency under IEEPA to deal with that threat. 80 Fed. Reg. 12747 (March 8, 2015). In multiple subsequent Executive Orders in 2017, 2018, and 2019, the President continued and amplified the original declaration of a national emergency. *See* Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 24, 2017); Exec. Order No. 13827 83 Fed. Reg. 12469 (March 19, 2018); Exec. Order No. 13835, 83 Fed. Reg. 24001 (May 21, 2018); Exec. Order No. 13850, 83 Fed. Reg. 55243 (Nov. 1, 2018); Exec. Order No. 13857, 84 Fed. Reg. 509 (Jan. 25, 2019); and Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019).

Since 2019, the President has continued the national emergency with respect to Venezuela and the prior Executive Orders. Among other things, these Executive Orders block the property, and interests in property, of the Government of Venezuela as well as that of certain individuals designated by the Secretary of the Treasury. Collectively, individuals and companies that have been designated and whose assets have been blocked are called "Specially Designated Nationals" or "SDNs."

To implement the national emergency with respect to Venezuela, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued the Venezuela Sanctions Regulations ("VSR"). *See* 31 C.F.R. part 591. The VSR generally prohibit transactions involving any property or interest in property blocked pursuant to Executive Order 13,692 or any of its successor Executive Orders, unless OFAC has granted a license under the VSR. *See* 31 C.F.R. §§ 591.101, 591.201-591.202. These provisions of the VSR were in effect at all times relevant to this prosecution.

On January 28, 2019, OFAC designated Venezuela's state-owned oil company, Petróleos de Venezuela, S.A. ("PDVSA") an SDN pursuant to Executive Order ("E.O.") 13850.

Achabal Technologies, Inc. ("ACHABAL") is located in Miami, Florida, and is an active Florida Profit Corporation. During all relevant times described below, Defendant was the Chief Executive Officer of ACHABAL, as reported in company registry records held by the State of Florida. Achabal Tecnologia S.A. ("ACHABAL TECNOLOGIA") is the Venezuelan branch of ACHABAL and, during all relevant times described below, also was controlled by Defendant.

Beginning in or around January 2019, Defendant and his co-conspirators arranged for Defendant, through his company ACHABAL and ACHABAL TECNOLOGIA, to receive funds from PDVSA for past services provided to PDVSA and, in part, providing and continuing to

4

provide a service to the Venezuelan military. Defendant, through his companies ACHABAL and ACHABAL TECNOLOGIA, received the funds from PDVSA through a third-party, TIPCO Asphalt Public Company ("TIPCO" a/k/a "TASCO"). TIPCO is a Thai company that manufactures and distributes asphalt products in the Asia Pacific region and has an asphalt refinery in Malaysia.

PDVSA paid Defendant, through ACHABAL and ACHABAL TECNOLOGIA, for: (i) past services provided to PDVSA and (ii) for providing a service to the Venezuelan military, because PDVSA had control of funds outside of Venezuela. At the direction of his co-conspirators, Defendant opened and maintained a foreign bank account in the name of his company, ACHABAL, in order to receive the funds from PDVSA.

As part of the conspiracy, Defendant provided the foreign bank with documentation to justify the receipt of funds from PDVSA through TIPCO, which documents concealed the fact that the funds were, in fact, from PDVSA. Defendant then transferred the PDVSA funds held in his foreign bank account in the name of his company ACHABAL to his U.S.-based bank account in the Southern District of Florida and to a U.S. financial services corporation.

Specifically, on or about February 28, 2019, Defendant, as President of ACHABAL, signed a document in which Defendant certified that "ACHABAL TECHNOLOGIES hereby acknowledges that PDVSA has been designated as a Specially Designated National (SDN) by the U.S. Office of Foreign Assets Control and due to this designation U.S. person [*sic*] are prohibited from engaging in transactions with PDVSA absent a general or specific license from OFAC authorizing the activity."

On or about March 4, 2019, Defendant, through ACHABAL's Portuguese business bank account, received a wire transfer payment from TIPCO, on behalf of PDVSA, in the amount of

approximately €1,964,890.83.

On or about March 4, 2019, Defendant, through ACHABAL's Portuguese business bank account, received a second wire transfer payment from TIPCO, on behalf of PDVSA, in the amount of approximately €509,378.70.

From on or about March 4, 2019, through on or about July 31, 2019, Defendant transferred a total of approximately €1,156,897 from ACHABAL's Portuguese bank account to ACHABAL's U.S. bank account in the Southern District of Florida.

From on or about April 23, 2019, to on or about November 24, 2020, Defendant transferred a total of approximately €906,638.60 to a U.S. financial services corporation from ACHABAL's Portuguese bank account.

From on or about March 4, 2019, through on or about July 31, 2019, TIPCO transferred approximately €2,474,269.53 into ACHABAL's Portugal bank account. During that same time period, Defendant transferred approximately €1,156,897 from ACHABAL's Portugal bank account to an ACHABAL U.S. bank account in the Southern District of Florida.

On or about March 5, 2020, Defendant, through ACHABAL's Portuguese business bank account, received a payment from TIPCO, on behalf of PDVSA, totaling approximately €764,792.64.

On or about March 9, 2020, Defendant provided the Portuguese business bank where ACHABAL had its bank account a letter, which stated, in part, that ACHABAL "acknowledges that PDVSA has been designated as a Specially Designated National (SDN) by the U.S. Office of Foreign Assets Control and due to this designation U.S. persons are prohibited from engaging in transactions with PDVSA absent a general or specific license from OFAC authorizing the activity."

On or about March 19, 2020, Defendant transferred approximately €176,340.70, which he had received from TIPCO in ACHABAL's Portuguese bank account, to ACHABAL's U.S. bank account in the Southern District of Florida.

A records check with OFAC revealed that none of Defendant, ACHABAL or ACHABAL TECNOLOGIA had ever submitted an application to OFAC for an OFAC license, and none of them had ever received an OFAC license. During the course of the conspiracy, Defendant knew that OFAC had designated PDVSA as an SDN and as such, he could not receive funds from PDVSA, even if through a third-party.

As a result of this offense, Defendant was paid by PDVSA the equivalent of $3,783,337.93 in U.S. currency.

Based on the record in this case, the total value of the proceeds traceable to the offense of conviction is $3,783,337.93, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

The United States has also not been able to locate all of the directly forfeitable property. It is the conclusion of Special Agent Amy Parker that other directly forfeitable property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. *See* Parker Decl. (attached as Exhibit 1 to Motion). Thus, pursuant to 21 U.S.C. § 853(p), the United States is authorized to forfeit substitute property, and the following property should be forfeited to satisfy the forfeiture money judgment:

> i. Real property located at 4696 N.W. 74th Avenue, Unit 7, Miami, Florida 33166, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,

Also known as: Unit 7, Building 2, Big Ben Commerce Center Condominium, a Condominium, all as set forth in the Declaration of Condominium and the Exhibit attached thereto and forming a part thereof, as recorded in Official Records Book 19561, Page 4562, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium,

Folio No. 30-3023-042-0150;

ii.   Real property located at 5077 NW 7th Street, Unit 1502, Miami, Florida 33126-3476, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,

Also known as: Unit 1502, Building 4, Blue Lagoon, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 23710, Page 3703, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium,

Folio No. 01-3131-032-4110;

iii.   Real property located at 5085 N.W. 7th Street, Unit 906, Miami, Florida 33126-3476, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,

Also known as: Unit 906, Building 3, Blue Lagoon, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 23710, Page 3703, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but is not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.,

Folio No.  01-3131-032-3730;

iv.   Real property located at 4543 Saddleworth Circle, Orlando, Florida 32826, including all buildings, fixtures, appurtenances, improvements, attachments, and easements found therein or thereon,

Also known as: Lot 315, UNIVERSITY ESTATES, UNIT 2, according to the Plat thereof on file in the Office of the Comptroller in and for Orange County, Florida, recorded in Plat Book 26, Page 30 through 32, of the Public Records

of Orange County, Florida; said lands situate, lying and being in Orange County, Florida,

Parcel Identification No. 01-22-31-8845-03150; and

v.   a 1997 Hawker Siddeley 125 Series 700A, Serial number NA0212, Registration number N118CD.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1.   Pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $3,783,337.93 is hereby entered against the Defendant.

2.   Pursuant to 21 U.S.C. § 853(p), the following substitute property is hereby forfeited and vested in the United States of America:

i.   Real property located at 4696 N.W. 74th Avenue, Unit 7, Miami, Florida 33166, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,

Also known as: Unit 7, Building 2, Big Ben Commerce Center Condominium, a Condominium, all as set forth in the Declaration of Condominium and the Exhibit attached thereto and forming a part thereof, as recorded in Official Records Book 19561, Page 4562, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium,

Folio No. 30-3023-042-0150;

ii.   Real property located at 5077 NW 7th Street, Unit 1502, Miami, Florida 33126-3476, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,

Also known as: Unit 1502, Building 4, Blue Lagoon, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 23710, Page 3703, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but not limited to, all appurtenances to

the condominium unit above described, including the undivided interest in the common elements of said condominium,

Folio No. 01-3131-032-4110;

iii.   Real property located at 5085 N.W. 7th Street, Unit 906, Miami, Florida 33126-3476, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,

Also known as: Unit 906, Building 3, Blue Lagoon, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 23710, Page 3703, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but is not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.,

Folio No.  01-3131-032-3730;

iv.   Real property located at 4543 Saddleworth Circle, Orlando, Florida 32826, including all buildings, fixtures, appurtenances, improvements, attachments, and easements found therein or thereon,

Also known as: Lot 315, UNIVERSITY ESTATES, UNIT 2, according to the Plat thereof on file in the Office of the Comptroller in and for Orange County, Florida, recorded in Plat Book 26, Page 30 through 32, of the Public Records of Orange County, Florida; said lands situate, lying and being in Orange County, Florida,

Parcel Identification No. 01-22-31-8845-03150; and

v.   a 1997 Hawker Siddeley 125 Series 700A, Serial number NA0212, Registration number N118CD.

3.   Any duly authorized law enforcement agency may seize and take possession of the forfeited property according to law.

4.   The United States shall send and publish notice of the forfeiture in accordance with Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n).

5.   The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

6.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

7.      The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

It is further **ORDERED** that upon adjudication of all third-party interests, if any, the Court will enter a final order of forfeiture as to the property in which all interests will be addressed. Upon notice from the United States that no claims have been filed within 60 days of the first day of publication or within 30 days of receipt of notice, whichever is earlier, then, pursuant to Rule 32.2(c)(2) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(7), this Order shall become a Final Order of Forfeiture and any duly authorized law enforcement agency shall dispose of the property in accordance with applicable law.

**DONE AND ORDERED** in Miami, Florida, on April 29, 2022.

HON. PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies Furnished to:
All Counsel of Record

11

# EXHIBIT 10

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## COURT CASE NUMBER: 21-CR-20442-PCH; NOTICE OF FORFEITURE

Notice is hereby given that on April 29, 2022, in the case of <u>U.S. v. Jorge Luis Nobrega Rodriguez</u>, Court Case Number 21-CR-20442-PCH, the United States District Court for the Southern District of Florida entered an Order condemning and forfeiting the following property to the United States of America:

Real Property at 4696 NW 74th Ave., Unit 7. Miami, FL (21-CBP-000433) and includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, more particularly described as:

Unit 7, Building 2, Big Ben Commerce Center Condominium, a Condominium, all as set forth in the Declaration of Condominium and the Exhibit attached thereto and forming a part thereof, as recorded in Official Records Book 19561, Page 4562, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.

Folio No. 30-3023-042-0150.

Real Property at 5077 NW 7th Street., Unit 1502. Miami, FL (21-CBP-000434) and includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, more particularly described as:

Unit 1502, Building 4, Blue Lagoon, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 23710, Page 3703, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the common elements of said condominium.

Folio No. 0I-3131-032-4110.

Real Property at 5085 NW 7th Street., Unit 906. Miami, FL (21-CBP-000435) and includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, more particularly described as:

Unit 906, Building 3, Blue Lagoon, a Condominium, all as set forth in the Declaration of Condominium and the Exhibits attached thereto and forming a part thereof, as recorded in Official Records Book 23710, Page 3703, and all amendments thereto, of the Public Records of Miami-Dade County, Florida. The above description includes, but not limited to, all appurtenances to the condominium unit above described, including the undivided interest in the

common elements of said condominium.

Folio No. 0l-3131-032-2630.

Real Property located at 4543 Saddleworth Circle, Orlando (21-CBP-000732) including all buildings, fixtures, appurtenances, improvements, attachments, and easements found therein or thereon,

Also known as: Lot 315, UNIVERSITY ESTATES, UNIT 2, according to the Plat thereof on file in the Office of the Comptroller in and for Orange County, Florida, recorded in Plat Book 26, Page 30 through 32, of the Public Records of Orange County, Florida; said lands situate, lying and being in Orange County, Florida,

Parcel Identification No. 01-22-31-8845-03150;

a 1977 Hawker Siddleley 125 Series 700A, S# NA0212. Reg # N118CD (21-CBP-000734)

The United States hereby gives notice of its intent to dispose of the forfeited property in such manner as the United States Attorney General may direct. Any person, other than the defendant(s) in this case, claiming interest in the forfeited property must file an ancillary petition within 60 days of the first date of publication (May 04, 2022) of this Notice on this official government internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1).  The ancillary petition must be filed with the Clerk of the Court, 400 North Miami Avenue, Room 8N09, Miami, FL  33128, and a copy served upon Assistant United States Attorney Joshua Paster, 99 N.E. 4th Street, Miami, FL  33132.  The ancillary petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to 21 U.S.C. § 853(n).

Following the Court's disposition of all ancillary petitions filed, or if no such petitions are filed, following the expiration of the period specified above for the filing of such ancillary petitions, the United States shall have clear title to the property and may warrant good title to any subsequent purchaser or transferee.

The government may also consider granting petitions for remission or mitigation, which pardon all or part of the property from the forfeiture.  A petition must include a description of your interest in the property supported by documentation; include any facts you believe justify the return of the property; and be signed under oath, subject to the penalty of perjury, or meet the requirements of an unsworn statement under penalty of perjury.  *See* 28 U.S.C. Section 1746.  For the regulations pertaining to remission or mitigation of the forfeiture, see 28 C.F.R. Sections 9.1 - 9.9.  The criteria for remission of the forfeiture are found at 28 C.F.R. Section 9.5(a).  The criteria for mitigation of the forfeiture are found at 28 C.F.R. Section 9.5(b).  The petition for remission need not be made in any particular form and may be filed online or in writing.  You should file a petition for remission not later than 11:59 PM EST 30

days after the date of final publication of this notice.  *See* 28 C.F.R. Section 9.3(a). The https://www.forfeiture.gov/FilingPetition.htm website provides access to a standard petition for remission form that may be mailed and the link to file a petition for remission online.  If you cannot find the desired assets online, you must file your petition for remission in writing by sending it to Assistant United States Attorney Joshua Paster, 99 N.E. 4th Street, Miami, FL  33132.  This website provides answers to frequently asked questions (FAQs) about filing a petition for remission.  You may file both an ancillary petition with the court and a petition for remission or mitigation.

# EXHIBIT 11



**U.S. Department of Justice**

United States Attorney
Southern District of Florida

*99 NE 4ᵗʰ Street - 7ᵗʰ Floor*
*Miami, FL, FL 33132*
*Telephone (305) 961-9365*
*Facsimile (305) 536-7599*

May 4, 2022

**VIA FEDERAL EXPRESS**

B&B Capital Group 26. LLC
c/o Jorge Isaac, Esq.
Isaac & Salgado Grondin, P.L.
267 Minorca Avenue
Suite 100
Coral Gables, Florida 33134

      Re:    Notice of Forfeiture in *United States v Jorge Luis Nobrega Rodriguez*
               Criminal Case No. 21-CR-20442-PCH

Dear Sir:

      The U.S. District Court for the Southern District of Florida has ordered that certain property in the above-referenced criminal case be forfeited to the United States. The enclosed published Notice of Forfeiture and Preliminary Order of Forfeiture describe the forfeited property and the procedure for filing a petition to claim any of the forfeited property. By receipt of this letter, you are on actual notice of the forfeiture and of your right to assert a claim. This letter is not intended to imply that the United States believes that you have a valid claim to any of the forfeited property.

      The procedure for filing a claim is set forth more fully in 21 U.S.C. § 853(n). Under 21 U.S.C. § 853(n)(2), a person must file a petition in the criminal case claiming forfeited property within thirty (30) days of the receipt of this letter or within 60 days of the first date of publication of the Notice of Forfeiture, <u>whichever is earlier</u>.

      Sincerely,

      Joshua Paster
      Assistant United States Attorney
      99 N.E. 4ᵗʰ Street, Suite 700
      Miami, Florida 33132
      Phone: (305) 961-9342

Enclosures: (1) Published Notice on Forfeiture & (2) Preliminary Order of Forfeiture